# CAUSE *of* ACTION
## ═ INSTITUTE ═

Pursuing Freedom & Opportunity through Justice & Accountability℠

February 27, 2018

**VIA ECF (CHAMBER'S COPY VIA HAND-DELIVERY TO CLERK'S OFFICE)**

The Honorable James Donato
United States District Judge
San Francisco Courthouse
450 Golden Gate Ave., Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:　**Federal Trade Commission (FTC) v. D-Link Systems, Inc.,
No. 3:17-cv-00039 JD**

Dear Judge Donato:

Pursuant to the Court's Order filed on February 20, 2018 (Dkt. No. 109), Defendant D-Link Systems, Inc. (DLS) respectfully submits this letter brief in response to FTC's letter brief filed February 15, 2018 (Dkt. No. 108). For the following reasons, this Court should deny FTC the relief it seeks.

## I.　　**FTC's Complaint Confirms the Relevance of FTC's Shodan Activities**

As this Court has noted, "FTC says that it undertook a thorough investigation before filing the complaint[.]" Order Re Motion to Dismiss, Dkt. No. 90, at 9 (citations omitted). FTC's Complaint avers: "***[R]emote attackers*** could search for vulnerable devices over the Internet and obtain their IP addresses using readily available tools, ***such as a popular search engine*** that can locate devices running particular software versions or operating in particular locations…. In many instances, an attacker could then take simple steps to exploit vulnerabilities in Defendants' routers and IP cameras[.]" Compl., Dkt. No. 1, ¶ 17 (emphasis added). Shodan is that so-called "popular search engine," as confirmed by FTC's Letter Brief. DLS should be permitted to learn the *facts* underlying FTC's claims, as alleged in the Complaint.[1] Because FTC itself intentionally injected Shodan into this case, FTC's Shodan-related activities are relevant and discoverable. *See* FRCP 26(b)(1).

FTC Counsel represented to this Court at the March 9, 2017 Rule 12(b)(6) hearing that FTC's Complaint at paragraphs 16-18 relied on "a variety of web sites that identify exploitations based on basically like (chk)white hat hackers or (chk)gray hat hackers identifying vulnerabilities in devices."[2] In a series of questions, the Court then put its finger on exactly why FTC is not entitled to the relief it seeks here.[3] FTC Counsel was simply unable, or unwilling, to disclose the nature of FTC's Shodan-

---

[1] Use of Shodan is also relevant to DLS's Eighth Defense. *See* Answer, Dkt. No. 92, at 15.

[2] Fed.R.Civ.P 12(b)(6) Hr'g Tr. 9:8-11, Mar. 9, 2017.

[3] *Id.* at 9:13–10:20.

A 501(c)(3) Nonprofit Corporation

The Honorable James Donato
February 27, 2018
Page 2

related activities as a *factual foundation* for the allegations in the Complaint.[4] DLS properly seeks to discover that information now in its defense.

FTC cannot use Shodan searches as a sword against DLS, and then seek to shield from discovery the putative "facts" on which it built its Complaint. Shodan is not a consulting expert under FRCP 26(b)(4)(D), and there is no common-interest privilege here, as confirmed by FTC's own description of Shodan's services in the Complaint. Nor was Shodan hired by FTC to assist it in the professional rendition of legal services. FTC's voluntary interactions with third parties like Shodan, described above, are not privileged.[5] *See also Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.,* No. C11–3288 EMC (JSC), 2011 WL 5827222, at *2-3 (N.D. Cal. Nov. 18, 2011).

Even if the "fruit" of FTC's Shodan activities was fact work product—it is not—DLS has a substantial need for it because FTC's Complaint spans a period of years and DLS cannot duplicate the results of whatever Shodan searches FTC conducted in the past. *Cf.* Order on Discovery Dispute, *FTC v. Qualcomm*, No. 17-cv-00220 LHK (NC), Dkt. No. 152, at 1, 4-5 (N.D. Cal. Aug. 24, 2017) (informant privilege overcome by need for third-party communications and Qualcomm's right to defend itself).

### A.   Shodan is Not Westlaw, So FTC's Shodan Activities Are Not Protected Work Product

Although FTC suggests otherwise, *see* FTC Letter, Dkt. No. 108, at 2, **Shodan is *not* Westlaw**. Use of it appears controversial among computer experts. *See, e.g.,* Ali Shemshadi et al., *Internet Based Search and Crawler Engine for the Web of Things*, in MANAGING THE WEB OF THINGS, at p. 38 (2017) (emphasis added) ("Shodan is basically designed as a search engine for hackers. It identifies and hacks into password protected devices connected to the Internet. … *Due to ethical issues and scope matters, we do not include Shodan in our study*."). It has been described as a "*real threat to Internet-facing ICS and thereby national security.*"[6] In 2016, U.S. Navy Admirals wrote to the Secretary of Defense requesting assistance dealing with "*nefarious cyber payloads" like "Shodan,*" which "*have the potential to debilitate our installations' critical infrastructure.*"[7]

---

[4] *Id.* at 8:8–10:20.

[5] Regardless, the work-product privilege does not protect facts contained within the work product. *See Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 644 (E.D. Cal. 2014).

[6] Roland C. Bodenheim, Captain, USAF AFIT-ENG-14-M-14, Impact of the Shodan Computer Search Engine On Internet-Facing Industrial Control System Devices, Thesis, Dep't of the Air Force, Air University, p. 102, http://www.dtic.mil/dtic/tr/fulltext/u2/a601219.pdf (emphasis added).

[7] Bill Gertz, *Commanders Urge Pentagon to Counter Growing Threat of Cyber Attacks on Industrial Controllers*, Flash/Critic, Cyber Threat News (Feb. 28, 2016),  http://flashcritic.com/commanders-urge-pentagon-to-counter-growing-threat-of-cyber-attacks-on-industrial-controllers/ (emphasis added).

The Honorable James Donato
February 27, 2018
Page 3

## II.   Shodan is Not a "Remote Computing Service" Under the Stored Communications Act

FTC incorrectly asserts, *see* FTC Letter, Dkt. No. 108, at 3, that Shodan is a "remote computing service" (RCS) under the Stored Communications Act, 18 U.S.C. §§ 2701-12 (SCA). FTC's bald statement is contrary to prevailing case law, principals of statutory construction, and legislative history. *See In re Zynga Privacy Litigation*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (determining the definition of "contents"); *cf. Joffe v. Google, Inc.*, 746 F.3d 920, 927 (9th Cir. 2013) (definition should "conform with the common understanding held contemporaneous with the enacting Congress"). SCA only protects contents of communications that are "of the two kinds of network services that were common in 1986" and thus, "stored search queries" likely fall outside of the dichotomies codified by the statute. *See* Orin Kerr, *The Next Generation Communications Privacy Act*, 162 U. PA. L. REV. 373, 395 (2014). Further, FTC's assertion of statutory rights under the SCA cannot be squared with the intent of the law—to provide Fourth Amendment-like protections to individuals and businesses. S. REP. 99-541, 1-3, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3555-57. Shodan is not an RCS, so the SCA does not apply. Regardless, FTC overstates the protections provided under 18 U.S.C. § 2702, which permits disclosure of "a record or other information pertaining to" an RCS subscriber or customer, but not the "contents" of covered communications, "with the lawful consent of the customer or subscriber" *or* "to any person other than a governmental entity." 18 U.S.C. § 2702(c) (emphasis added). Because DLS is not a governmental entity, Shodan may divulge FTC's "record or other information" requested by the subpoena, regardless of FTC's consent. *See, e.g, Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 787924, at *3 (N.D. Cal. Feb. 29, 2016), *appeal dismissed* (May 20, 2016).

In any event, the materials at issue are within the scope of DLS's Requests for Production under FRCP 34—which is why these materials were listed in FTC's categorical privilege log even before the Shodan subpoenas were served—and therefore this Court can direct FTC to consent to the production of those materials. *See Flagg v. City of Detroit*, 252 F.R.D. 346, 363-66 (E.D. Mich. 2008). Alternatively, this Court can order FTC to produce the Shodan materials it possesses pursuant to FRCP 34, obviating the need for third party Shodan to also produce such materials.

For these reasons, DLS respectfully requests that the Court deny FTC the relief it requests.

Respectfully submitted,

s/   Patrick J. Massari
Patrick J. Massari of CoA [admitted *pro hac vice*]; Erica Connolly of Vinson & Elkins LLP
Attorneys for Defendant D-Link Systems, Inc.

1

**CERTIFICATE OF SERVICE**

2

I, Patrick J. Massari, declare as follows:

3

Pursuant to Civil L.R. 5-1(h)(2) and Civil L.R. 5-5(a), I hereby certify that on February 27,

4

2018, in Washington, D.C., in addition to serving a true and correct copy of the foregoing

5

Defendant D-Link Systems, Inc.'s ("DLS") Response to Plaintiff Federal Trade Commission's

6

("FTC") Discovery Dispute Letter, Dkt. No. 108, on counsel for Plaintiff FTC via by using this

7

Court's CM/ECF system, I also served a true and correct copy of DLS's Response to Plaintiff

8

FTC's Discovery Dispute Letter on the following counsel for third-party Shodan, LLC, via e-mail:

9

10

Reid Wittliff
Wittliff | Cutter | Austin, PLLC

11

1803 West Avenue
Austin, Texas 78701

12

Office: 512.960.4866
Fax: 512.960.4869

13

Skype: reid.wittliff
reid@wittliffcutter.com

14

15

*Attorney for Shodan, LLC*

16

17

I declare under penalty of perjury under the laws of the United States that the foregoing is

18

true and correct.

19

Executed this 27th day of February, 2018 at Washington, D.C.

20

21

  s/ Patrick J. Massari

22

Patrick J. Massari

23

24

25

26

27

28

-1-

CERTIFICATE OF SERVICE OF DLS RESPONSE
TO FTC DISCOVERY DISPUTE LETTER
4818-9994-9888.v1