Kevin H. Moriarty (D.C. Bar No. 975904)
Cathlin Tully (N.Y. Bar)
Shameka L. Walker (D.C. Bar No. 493891)
Jarad Brown (CA Bar No. 294516)
Katherine E. McCarron (D.C. Bar No. 486335)
James A. Trilling (D.C. Bar No. 467273)
Laura Riposo VanDruff (D.C. Bar No. 481785)
Federal Trade Commission
600 Pennsylvania Avenue NW, Mail Drop CC-8232
Washington, DC 20580
P: (202) 326-2949/F: (202) 326-3062
kmoriarty@ftc.gov; ctully@ftc.gov; swalker@ftc.gov,
jbrown4@ftc.gov; kmccarron@ftc.gov; jtrilling@ftc.gov; lvandruff@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> D-LINK SYSTEMS, INC., <br><br> Defendant. | CIVIL ACTION NO. 3:17-CV-00039-JD <br><br> **FEDERAL TRADE COMMISSION'S OPPOSITION TO D-LINK SYSTEMS, INC.'S MOTION TO EXCLUDE THE EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE** <br><br> Date:  November 8, 2018 <br> Time: 10:00 <br> Location: Courtroom 11, 19th Floor |

**FEDERAL TRADE COMMISSION'S OPPOSITION TO
D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE
EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
Case No. 3:17-CV-00039-JD

# TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Background ............................................................................................................................. 2

Legal Standard ........................................................................................................................ 3

Argument ................................................................................................................................ 4

    I.    Dr. Van Liere's Survey and Opinions are Relevant and Reliable ......................... 4

        A.    Dr. Van Liere's Opinions Are Relevant and Helpful to the Trier of Fact ........................................................................................................ 4

        B.    Survey Materials Replicated the Consumer Experience ........................... 5

        C.    GUI Pop-Up Screen Uses D-Link's Method ............................................ 7

        D.    Survey Questions Were Not Leading ...................................................... 10

        E.    Dr. Van Liere Properly Defined the Relevant Population ...................... 10

        F.    Survey Controlled for Background Noise ............................................... 12

        G.    That D-Link Intended to Sell Some IP Cameras to Business Customers Has No Bearing on the Relevance or Reliability of Dr. Van Liere's Conclusions ........................................................................ 13

    II.    Dr. Van Liere's Survey and Opinions Do Not Introduce New Theories of Liability Or Additional IP Cameras ...................................................................... 14

Conclusion ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Alzheimer's Disease & Related Disorders Association v. Alzheimer's Foundation of America Inc.*, 397 F. Supp. 3d 260 (S.D.N.Y. 2018) .............................................................. 11

*Citizens Financial Group, Inc. v. Citizens National Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004) ................................................................................................................................ 13

*Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252 (9th Cir. 2001) ...................................... 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (1995) .......................................... 7

*Fortune Dynamic v. Victoria's Secret Stores Brand Management Inc.*, 618 F.3d 1025 (9th Cir. 2010) ............................................................................................................................... 4

*FTC v. Cyberspace.com, LLC*, 453 F.3d 1196 (9th Cir. 2006) ...................................................... 8

*FTC v. DIRECTV*, Case No. 15-cv-01129-HSG, 2018 WL 3911196 (Aug. 16, 2018) ................ 16

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ........ 6, 9

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d  867 (N.D. Cal. 2016) .......................... 4, 5, 7

*Scotts Company v. United Industries Corp.*, 315 F.3d 264 (4th Cir. 2002) .................................... 6

*The State of New York and the City of New York v. United Parcel Service, Inc.*, No. 15-cv-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. 2016) .............................................................. 12

*United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th. Cir. 2006) .............................................. 5

*Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136 (10th Cir. 2013) .......................................... 6

**Rules**

Federal  Rule of Evidence 401 .......................................................................................................... 4

Federal Rule of Evidence 702 ............................................................................................... 3, 4, 9, 15

# INTRODUCTION

Defendant D-Link Systems, Inc.'s ("D-Link") Motion to Exclude the Expert Report and Opinions of Dr. Kent D. Van Liere ("Mot.") fails for several reasons. First, Dr. Van Liere's survey and opinions are relevant, reliable, and helpful to the trier of fact. His survey evaluates the extent to which consumers understood from certain D-Link IP cameras' Graphical User Interfaces ("GUIs") that D-Link secured its IP cameras from unauthorized access and control, as alleged by the FTC in its Complaint Count VI. Specifically, his survey shows that a significant percentage of consumers were misled by the phrase "Please enter a password to secure your device," because they believe (incorrectly) that their password will be the only password that can access the device. In addition, Dr. Van Liere's survey demonstrates that D-Link's claims in its IP cameras' GUIs are material.

Dr. Van Liere's survey methodology is reliable on multiple fronts: 1) the survey showed respondents a similar GUI screen from a D-Link IP camera that the FTC identified in its Complaint as deceptive in Exhibit PX 11; 2) the control materials, also created from screens originally present in the GUI, were designed to share as many of the same characteristics as possible of the GUI as it exists in the IP camera; 3) he appropriately defined the relevant population as those who had purchased an IP camera in the same time period that D-Link sold the IP cameras at issue, and respondents would therefore have had some previous familiarity with a GUI for an IP camera; and 4) the survey methodology employed test and control groups to control for background noise, including any preexisting beliefs about IP camera security held by respondents.

Defendant's arguments about Dr. Van Liere's testimony, specifically: 1) adding new theories of liability; and 2) expanding the list of relevant IP cameras, are duplicative of other briefings. *See* Dkts. 163 and 194. They fail here because Dr. Van Liere did not test a failure to disclose theory—he tested the effect of D-Link's representations about using a password to secure the IP camera—and, therefore, could in no way be expanding the FTC's theory of

**FEDERAL TRADE COMMISSION'S OPPOSITION TO                                                                 1
D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE
EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE
Case No. 3:17-CV-00039-JD**

liability.  Likewise, D-Link's argument about his testimony adding additional IP cameras also fails.  The FTC identified these cameras as being at issue on March 17, 2017, in the FTC's initial disclosures, Appendix A.

## BACKGROUND

If trial proceeds in this matter, the FTC will establish that D-Link represented in the GUIs for its IP cameras, alongside security features such as device passwords, that certain of its IP cameras were secure from unauthorized access and control.  Compl. ¶¶ 43-45.  D-Link sold the first of these IP cameras at issue over ten years ago,[1] and at least one such IP camera device model remained available for sale as recently as mid-August 2018.  *See* Tully Decl. Ex. 1, Hine Decl.  As the undisputed record demonstrates, these IP cameras contain easily exploitable backdoors that would allow anyone to access the IP cameras' feeds over the internet using the combination username and password, "guest/guest."  FTC Mot. for Summ. J. 9-10 (Sept. 21, 2018) (Dkt. 178).

Dr. Van Liere conducted a survey to evaluate the extent to which consumers were likely to be misled into believing that D-Link secured its IP cameras from unauthorized access and control.  Vecchione Decl. Ex. 1, Expert Report of Dr. Kent D. Van Liere ("Van Liere Report") ¶ 1.  The survey assed the extent to which after seeing the statement, "Please enter a password to secure your camera," and then setting a password for their IP cameras, respondents were likely to believe that there was only one password that would allow access to the camera.  *Id.*  The survey sampled 500 respondents and randomly assigned them to the test or the control group.  *Id.* ¶¶ 19, 24.  Respondents in both groups viewed the GUI for the D-Link's DCS-2310L camera, as it actually appears in the camera during the point at which consumers set their passwords, and they were then required to set a password using a generic password provided to them ("abc123").  *Id.*

---

[1] D-Link Sys.' 1st Am. Answers & Objs. to FTC 3d Set of Interrogs. Resp. 9 (stating DCS-3411 sold starting Nov. 12, 2010), attached as Ex. 11 to Brown Decl. (Dkt. 177-12) (Sept. 21, 2018), in support of the FTC's Mot. for S. J. (Dkt. 178) (Sept. 21, 2018).

FEDERAL TRADE COMMISSION'S OPPOSITION TO
D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE
EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE
Case No. 3:17-CV-00039-JD

¶¶ 24, 30.  Respondents in the control group then viewed an additional GUI screen, stating, "Even though you are setting a password to secure your camera, there may be other passwords left by the manufacturer are able to access this device."  *Id.* ¶ 32.  The formatting of this screen is original to the camera; respondents would see a similar "pop-up" screen if they set an inadequate password during this step of the set-up process.  *See* Tully Decl. Ex. 2, Van Liere Dep. 106:22-108:1; s*ee also, e.g.*, Vecchione Decl. Ex. 1, Van Liere Report pp. 59-61.  The survey then asked respondents a question designed to elicit their understanding of whether or not there are passwords other than the one they set which would allow access to the device.  *Id.* ¶¶ 26, 37.  Finally, the survey queried whether the presence of additional passwords that may allow unauthorized users access to the camera would be a fact that influenced respondents' decision to purchase the camera.  *Id.* ¶ 27.  For those who indicated that it would influence their decision, the survey asked whether the information made them more or less likely to purchase the camera.  *Id.*

In reporting on the survey's results, Dr. Van Liere subtracted, or "netted off" the responses of those in the control group to control for background noise, including any preexisting beliefs about passwords on IP cameras.  *Id.* ¶¶ 40, 43; Tully Decl. Ex. 2, Van Liere Dep. 105:5-22, 118:7-120:12.  The survey results reveal that the D-Link IP camera's GUI misled a net 43 percent of respondents into believing that the only password that would allow access to the camera was the one that they had set.  Vecchione Decl. Ex 1, Van Liere Report ¶ 40.  The survey results further demonstrate that knowledge of the presence of additional passwords that would allow unauthorized access to the device is a material fact to a net 30 percent of respondents who indicated that they are less likely to purchase this camera.  *Id.* ¶ 43.

## LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, expert testimony is permitted so long as the expert is "qualified . . . by knowledge, skill, experience, training, or education" and possesses specialized knowledge that "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Rule 702 requires that such opinion testimony rest

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**     **3**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

on "sufficient facts or data," reflect the use of "reliable principles and methods" appropriate to the expert's field, and apply the principles and methods reliably to the facts of the case. *Id.* For survey evidence, the proponent is required only to establish a proper foundation for admissibility and to demonstrate that the survey is relevant and was conducted according to accepted principles. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) ("Once the survey is admitted, . . . follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility."); *see also Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 905 (N.D. Cal. 2016) (citing *Fortune Dynamic v. Victoria's Secret Stores Brand Mgmt. Inc.*, 618 F.3d 1025, 1036) (9th Cir. 2010) ("The general rule is that 'as long as [the survey] is conducted according to accepted principles and is relevant,' the 'technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'"). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401.

## ARGUMENT

**I.     DR. VAN LIERE'S SURVEY AND OPINIONS ARE RELEVANT AND RELIABLE**

**A.     Dr. Van Liere's Opinions Are Relevant and Helpful to the Trier of Fact**

Dr. Van Liere's opinions regarding consumers' understanding of PX 11 are relevant to and probative of the facts alleged in Count VI of the FTC's Complaint. *See Mullins*, 178 F. Supp. 3d at 888 (citing *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th. Cir. 2006) (stating that "[e]xpert opinions are relevant if the knowledge underlying them has a valid connection to the pertinent inquiry) (internal quotations removed)). Count VI of the Complaint alleges that D-Link represented that its IP cameras were secure from unauthorized access and control, via statements instructing consumers to enter a password to secure their cameras alongside security features such as administrator passwords. *See* Compl. ¶¶ 24, 43-45. The Van

**FEDERAL TRADE COMMISSION'S OPPOSITION TO                                         4
D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE
EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE
Case No. 3:17-CV-00039-JD**

Liere survey evaluated "the extent to which consumers in the relevant market are likely to be misled into believing that [D-Link] secured its IP cameras from unauthorized access and control."  Vecchione Decl. Ex. 1, Van Liere Report ¶ 1.

The Complaint attached exhibits PX 10-11 as examples of D-Link's deceptive representations in its IP cameras' GUIs.  Compl. ¶ 24.  Dr. Van Liere's survey assigned respondents in both the test and control groups to view stimuli as they would encounter them in setting up an IP Camera.  Vecchione Decl. Ex. 1, Van Liere Report ¶¶ 30, 32.  Specifically, similar to PX 11, respondents viewed a GUI for the set-up process that instructed, "Please enter a password to secure your camera," above a prompt for them to enter and confirm a password.  *Id.* ¶¶ 30, 32.[2]  Dr. Van Liere's survey and testimony regarding its results, therefore, are relevant to the claims made in D-Link's IP cameras' GUIs, and their admission will be helpful to the trier of fact.

### B.     Survey Materials Replicated the Consumer Experience

The materials viewed by survey respondents replicate market conditions, contrary to D-Link's assertions.  The survey presented the password screen from the DCS-2310L IP camera to respondents in both the test and control groups as it appears in the IP camera.  *Id.* ¶¶ 30, 32.  As Dr. Van Liere testified:  "The test stimuli is the interface as it exists in the market. . . . [W]e didn't manipulate the interface to get certain words in there in the test condition.  It is what's on the interface."  Tully Decl. Ex. 2, Van Liere Dep. 69:10-19.  *See also id.* 229:17-231:10 ("we went through a bunch of effort to get a camera and actually go through the set-up and take a picture so that the picture we were using and the way we had them interact is exactly what they

---

[2] D-Link also argues in its motion that Dr. Van Liere "revealed for the first time at his deposition that the screenshot in his report was from a camera purchased and reviewed by his staff within the last year or two."  Mot. 6.  This is false: Dr. Van Liere's Report disclosed, months ago, that the stimuli shown to respondents are actual screenshots taken by a member of his staff while going through the process of setting up a DCS-2310L camera.  Vecchione Decl. Ex. 1, Van Liere Report ¶ 30.  Further, Dr. Van Liere pointed to the relevant sentence in his report during his deposition.  Tully Decl. Ex. 2, Van Liere Dep. 89:11-90:8.

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**                                                                                                **5**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

would have seen if they would have bought a camera and done it.").[3]  The survey was conducted online; therefore, respondents viewed the GUI password screen on their computers, as they would have if they were setting up the IP camera in reality.  Vecchione Decl. Ex. 1, Van Liere Report ¶ 22.  The survey also required respondents to enter a password, as they would have if they were setting up the device.  Tully Decl. Ex. 2, Van Liere Dep. 230:16-231:10.  If respondents entered the password incorrectly, the survey displayed a pop-up similar to one shown to consumers who enter an insufficient password when setting up the IP camera.[4]  *Id.*

D-Link argues that Dr. Van Liere's opinion fails *Daubert*—even in a bench trial—because he tested the very representation at issue in Count VI of the Complaint.  Mot. 2, 12-13.  That is, Defendant posits that Dr. Van Liere should have tested other materials, such as the IP camera's marketing materials, packaging, user manual, or the other GUI screens from the set-up process.  *Id.*  D-Link's suggestion that the survey should have tested materials not at issue in this case is nonsensical: Testing whether or not D-Link's marketing materials for the DCS-2310L IP camera deceived consumers would have no bearing on whether its representations in the IP camera's GUI misled consumers.  Dr. Van Liere designed his survey to connect specifically to

---

[3] D-Link's reliance on certain trademark cases *supports* Dr. Van Liere's survey for the very fact that he tested the relevant deceptive representations at issue, exactly how they would appear to consumers setting up a DCS-2310L IP camera. *See Scotts Company v. United Industries Corp.*, 315 F.3d 264, 280 (4th Cir. 2002) (finding that test materials in a survey were deficient where they focused in on only one quarter of the representations at issue and obscured the remaining 75%); *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1145-46 (10th Cir. 2013) (holding that a survey was inadmissible where it did not accurately reproduce trademarks at issue in the way they would ordinarily appear to consumers); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 585-595 (S.D.N.Y. 2007) (holding a survey was inadmissible where the stimulus did not show respondents the relevant marks at issue, but instead blurred them to the point of illegibility).

[4] D-Link also suggests, but provides no basis for its contention, that providing survey respondents with a generic password to use while taking the survey is somehow problematic. Dr. Van Liere deliberately chose to provide respondents with a generic password to preserve their privacy and trust. He was concerned that respondents would distrust the survey because it was collecting passwords created by respondents.  Tully Decl. Ex. 2, Van Liere Dep. at 108:9-109:20, 110:15-111:22.

the allegations as described in Count VI of the Complaint. Tully Decl. Ex. 2, Van Liere Dep. 248:17-249:15. *See Mullins*, 178 F. Supp. 3d at 888 (holding that expert opinions are relevant where the knowledge underlying them has a valid connection to the pertinent inquiry) (internal citations and quotations removed)).

Finally, D-Link's specious arguments about consumers' interactions with putative "disclaimers," Mot. 12-13, fails to disclose to the Court that the quoted text is found in the fine print of a lengthy End User License Agreement ("EULA"). D-Link presents no evidence that a consumer would be required to scroll through the EULA text—which would be necessary to view the language quoted in D-Link's brief—to proceed to the next setup screen. More importantly, nothing in the fine print of the EULA representations inform a consumer that the IP camera contains hard-coded credentials that the user cannot change. *See* Vecchione Decl. Ex. 4, DX-123 3-9. *See also* Tully Decl. Ex. 3, Poret Dep. 153:20:154:1. Furthermore, D-Link's insinuation by argument that the fine print in its EULA somehow shields it from liability is contrary to law. *See FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (holding that fine print disclaimer did not preclude liability under Section 5 of FTC Act, because "solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures.").

### C. GUI Pop-Up Screen Uses D-Link's Method

Those respondents in Dr. Van Liere's control group viewed the same GUI password screen from the DCS-2310L as those in the test group, as well as a subsequent screen with a "pop-up" stating, "Even though you are setting a password to secure your camera, there may be other passwords left by the manufacturer that are able to access this device." Vecchione Decl. Ex. 1, Van Liere Report ¶ 32. D-Link's criticisms about the design of the pop-up, the specific language of this statement, and the information conveyed by this statement, are all without merit. Mot. 2, 12-14.

As Dr. Van Liere described repeatedly throughout his deposition, the intention of using a pop-up, rather than a less-obtrusive format, was to draw respondents' attention to it.  Tully Decl. Ex. 2, Van Liere Dep. 105:5-106:8, 118:7-120:12, 127:13-128:12, 136:18-138:3, 138:12-139:16, 160:2-12, 248:17-250:7.  Dr. Van Liere designed the control materials to measure the rate at which people in the test group were *guessing* that there is only one password that allows access to the IP camera.  *Id.* 105:5-106:8, 118:7-120:12, 127:13-128:12, 136:18-138:3, 160:2-12.  In order to have the control stimulus measure whether respondents were guessing, the stimulus needed to have created a condition where respondents were aware of the fact that there were other passwords on the device.  *Id.* 102:6-103:17.  The purpose of the control stimulus was to make it "abundantly clear" that there were other passwords on the device.  *Id.* 105:5-22.  To the extent that respondents in the control group still believed that there was only one password, it is a "reasonable measure of the degree to which people [were] just guessing because of the nature of the survey process or their preexisting beliefs." *Id.* 105:5-22.  Removing these "guessers" creates a net percentage of people who likely believe the IP camera only has one password based upon their experiences viewing the representations on the GUI during the point of the set-up where they would create a password for the device.  *Id.* 132:18-134:12.  Using this pop-up design in particular, is reasonable because a pop-up already exists in the GUI—consumers would have encountered it if they did not set an adequate password on the IP camera.[5]  *Id.* 106:22-108:1.

D-Link implies that using a noticeable pop-up with specific language is problematic, when, as described below, drawing respondents' attention to the control statement both visually and linguistically yields conservative results.  Specifically, in reporting on whether the presence of additional passwords on the IP camera was material to respondents, Dr. Van Liere subtracted

---

[5] The fact that the control group saw both screens as they exist in an actual camera (aside from the inserted statement about the presence of additional passwords) is evidence that Dr. Van Liere's control stimulus had as much in common with the original interface as was possible.  *See Louis Vuitton*, 525 F. Supp. 2d at 595-96 (finding that a control stimulus was flawed where it had little in common with the bags at issue).

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**       **8**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

the percentage of respondents in the control group who said that they were less likely to purchase the camera (16%) from those in the test group (46%) to arrive at his conclusion that the presence of these additional passwords was material to 30 percent of respondents. Vecchione Decl. Ex. 1, Van Liere Report ¶¶ 41-43. Had the control materials conveyed the information about additional passwords using less "inflammatory language," as D-Link characterizes[6] Dr. Van Liere's choices, or even changed the control to convey different information, such as "reveal[ing] the actual risk of access to the device by those other than the user," Mot. 2, that would have lowered the percentage of people in the control group who said they were less likely to purchase the camera, and would thus result in a greater net percentage of respondents indicating that this information is material to them. Tully Decl. Ex. 2, Van Liere Dep. 138:12-139:16. As Dr. Van Liere testified repeatedly: "[Anything that] would lessen in the control the number of people who said they were less likely to buy it. . . .would actually be subtracting less off of my test results. My test results would look even bigger and my conclusion [regarding materiality] would be even stronger." *Id.*

    D-Link's citations to Dr. Van Liere's previous work are not relevant here because 1) no court has ever found his work inadmissible under Rule 702 of the Federal Rules of Evidence,

---

[6] By describing information provided to Dr. Van Liere's control group as "inflammatory," D-Link appears to be arguing that it would inflame or outrage consumers to learn that the manufacturer of their IP cameras had built in "backdoor" passwords to the devices that anyone could use to access the devices' feeds. Ironically, it is undisputed in this case that that is precisely what D-Link did. Indeed, Dr. Van Liere's disclosure is not as inflammatory as what D-Link actually did: Dr. Van Liere's disclosure suggested that the backdoor credentials were a possibility ("there may be other passwords"), but, in fact, D-Link built these credentials into all the IP cameras identified in his report. Nor is there any merit to D-Link's suggestion of alternative language—"when you enter a password here manufacturer passwords may allow access to the site." Mot. 11. This disclosure is nonsense for many reasons: (1) the manufacturer password works regardless of whether the consumer enters the password; and (2) the manufacturer password allows access to the IP camera, not the "site." D-Link's failure to propose a disclosure that makes any sense, with all the benefits of hindsight, undermines D-Link's attack on Dr. Van Liere's choice of disclosure language.

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**      9
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

including in those cases cited by D-Link its Motion;[7] 2) Dr. Van Liere's control shared as many of the same characteristics as possible of the GUI as it exists in the IP camera;[8] and 3) Dr. Van Liere's control in this survey was appropriate because it drew the attention of respondents.[9]

### D.   Survey Questions Were Not Leading

Dr. Van Liere's survey questions were not leading simply because they incorporated the language of the statement about the presence of additional passwords on the device. Dr. Van Liere testified that he used the term "unauthorized access" in the language of his question because D-Link itself uses this term in its own marketing materials. Tully Decl. Ex. 2, Van Liere Dep. 148:4-149:7, 185:17-186:5. D-Link does not offer any suggestion as to how using the term "unauthorized access" creates a demand effect or cue as to how respondents should answer. Mot. 14. The fact that the survey used a test/control methodology further removes the effects of any guessing by respondents. Vecchione Decl. Ex. 1, Van Liere Report ¶¶ 19, 24, 40, 43.

### E.   Dr. Van Liere Properly Defined the Relevant Population

Dr. Van Liere's relevant population is appropriate for the deceptive claims and D-Link products at issue. His survey defined the relevant population as "adult consumers 18 years or older who reported that they had purchased a Wi-Fi home IP security camera in the past 10 years, and were the sole or shared decision maker on the purchase decision." *Id.* ¶ 17. D-Link, in its Motion, takes issue with the time period, *i.e.*, consumers who purchased an IP camera within the past ten years. Mot. 12. D-Link began selling the IP cameras that made the misleading

---

[7] *See* Tully Decl. Ex. 2, Van Liere Dep. 19:14-20:5.
[8] *See Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.*, 397 F. Supp. 3d 260, 279-80 (S.D.N.Y. 2018) (finding that a different control would have incorporated sponsored ads to better replicate the search process).
[9] *See id.* 276-78 (finding that, in a net confusion study, other potential control terms would have generated more confusion and would therefore be preferable.

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**                                                       **10**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

representations at issue in 2008, ten years ago.[10]  This fact alone supports Dr. Van Liere's definition of the relevant population.[11]

D-Link also argues that the survey's time period is wrong because the "FTC has zero evidence that <u>any</u> DLS IP camera had the password problem after 2014." Mot. 12.  However, the FTC has presented an August 28, 2018 declaration,[12] which confirms that D-Link's DCS-2310L[13] IP cameras were being sold as of August 16, 2018, and that they persist in presenting the "password problem"—the guest/guest hard-coded credentials.

D-Link's argument that the survey universe should have included prospective purchasers of IP cameras rather than past purchasers also falls flat. Mot. 12.  Dr. Van Liere ably described his rationale for including only past purchasers of IP cameras in his deposition, stating:

> the main reason in this instance is because we were testing a part of the set-up process of a device.  So these are all people, who, in theory, have gone through the process of setting up a camera.  So unlike in a situation where you want prospective purchasers, for this particular case and the particular assignment I had, the key was to find people who had had these cameras or had purchased them and ask them about what they thought about the set-up process.

---

[10] D-Link Sys.'s 1st Am. Answers & Objs. to FTC 3d Set of Interrogs. Resp. 9 (stating DCS-3411 sold starting Nov. 12, 2010), attached as Ex. 11 to Brown Decl. (Dkt. 177-12) (Sept. 21, 2018), in support of the FTC's Mot. for S. J. (Dkt. 178) (Sept. 21, 2018).  The IP cameras listed all contain identical or virtually identical misrepresentations. Vecchione Decl. Ex. 1, Van Liere Report ¶ 12.

[11] In its Motion, D-Link cites to *The State of New York and the City of New York v. United Parcel Service, Inc.*, No. 15-cv-1136 (KBF), 2016 WL 4735368, at *5-6 (S.D.N.Y. 2016),, for the proposition that Dr. Van Liere has criticized surveys in the past for using the wrong time period. Mot. 12. In the cited case, Dr. Van Liere criticized the survey for failing to specify a time period altogether. *State of NY & City of NY*, 2016 WL 4735368, at *6.

[12] Tully Decl. Ex. 1, Hine Declaration. The Court granted the FTC leave to amend its initial disclosures on September 21, 2018 [Dkt. 191]. Mr. Hine's deposition took place on October 1, 2018.

[13] This is the same IP camera model as the one used in Dr. Van Liere's survey.

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**                             **11**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

Tully Decl. Ex. 2, Van Liere Dep. 190:1-13.[14]  D-Link does not provide any further rationale for its assertion that surveying consumers who may have never set up an IP camera is somehow more relevant to understanding how consumers would have interpreted D-Link's deceptive claims in its IP cameras' user interfaces over the past ten years since they were initially sold. Mot. 12.

### F.   Survey Controlled for Background Noise

D-Link argues that Dr. Van Liere's survey did not control for background noise that would reflect respondents' preexisting beliefs concerning security provided by the DCS-2310L IP camera.  Mot. 7.  This assertion is inaccurate because Dr. Van Liere's survey used test and control groups to net off the effects of background noise.  Vecchione Decl. Ex. 1, Van Liere Report ¶ 40.  Dr. Van Liere's expert report directly addresses this point, explaining, "it is standard practice for surveys used to assess whether allegedly misleading advertising causes consumers to form specific perceptions to include a control stimulus to estimate the extent to which results in the test condition are due to various forms of background noise." *Id.* ¶ 31.  As Dr. Van Liere described in his deposition, to the extent that respondents have any pre-existing beliefs concerning IP camera security, respondents in both the test and control groups would share these beliefs in equal measure.  Tully Decl. Ex. 2, Van Liere Dep. 132:18-134:12; 174:4-175:15.  By netting off the percentage of people in the control group who believe there is only one password for the device, even when they are presented with information to the contrary, the survey results account for any preexisting beliefs respondents have about whether the only password on the DCS-2310L is the one that they created.  *Id.* 118:7-120:12.

---

[14] Dr. Van Liere's definition of the relevant population is easily distinguishable from *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, because he surveyed those who purchased and set up an IP camera during the same time period that D-Link sold the relevant devices at issue.  *See Citizen Fin. Grp.*, 383 F.3d at 121 (upholding the district court's ruling that the survey universe of *potential* customers, rather than limited to customers in the banks' *existing* geographic areas, was improper) (emphasis added).

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**                                                                                                 **12**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

D-Link argues that the fact that 78% of survey respondents believed the video from the IP camera was stored in the cloud suggests that Dr. Van Liere's survey did not take into account respondents' preexisting beliefs. Mot. 3. This is untrue. As Dr. Van Liere testified, "it is no particular surprise . . . that a large majority of people thought it was a cloud camera . . . or stored information in the cloud." Tully Decl. Ex. 2, Van Liere Dep. 207:21-208:20. The GUI screen from the DCS-2310L mentions the term "cloud" *no less than three times*: "Select your *Cloud* Camera"; "Searching *Cloud* Cameras"; and "Can't find your *Cloud* Camera in the list?" Vecchione Decl. Ex. 1, Van Liere Report ¶ 30. Therefore, D-Link's assertion, Mot. 3, that "Nothing [D-Link] said or did created these beliefs," is without merit.

### G. That D-Link Intended to Sell Some IP Cameras to Business Customers Has No Bearing on the Relevance or Reliability of Dr. Van Liere's Conclusions

D-Link claims that some of the IP cameras at issue are not targeted to consumers,[15] and argues that the results of Dr. Van Liere's survey, which defined the relevant population as including "consumers," cannot be extrapolated to the IP cameras targeted for business use. Mot. 3, 12. However, Dr. Van Liere addressed this point directly in his deposition, stating that he *did not* make the assumption that all of the IP cameras at issue were targeted to consumers,[16] and that his opinions would not change if some of the cameras were for business use because "70, 80, 90 percent of businesses are small businesses. And the people that are small business people are not that much different than consumers generally." Tully Decl. Ex. 2, Van Liere Dep. 82:3-20. D-Link has not introduced any evidence to suggest that individuals purchasing IP cameras for business use are not misled by D-Link's representations about securing the camera through setting a password.

---

[15] D-Link fails to support its argument that individual purchasers of "Business Class" cameras are not misled by the GUI or have different expectations as to the security of D-Link's IP cameras from unauthorized access. Mot. 3, 12.

[16] Tully Decl. Ex. 2, Van Liere Dep. 81:20-82:2.

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**     **13**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

## II. DR. VAN LIERE'S SURVEY AND OPINIONS DO NOT INTRODUCE NEW THEORIES OF LIABILITY OR ADDITIONAL IP CAMERAS

D-Link's argument about Dr. Van Liere's survey introducing new theories of liability is duplicative of its previous briefing to the Court;[17] is rebutted by FTC counsel's representations;[18] and is not supported in any way by Dr. Van Liere's report or testimony.  Dr. Van Liere clearly describes the purpose of his survey as to "assess the extent to which after seeing the statement 'Please enter a password to secure your camera' and then setting a password for their IP camera respondents to [the] survey are likely to believe that there was only one password that will allow access to the camera." Vecchione Decl. Ex. 1, Van Liere Report ¶ 1.  *See also* Tully Decl. Ex. 2, Van Liere Dep. 156:20-157:12 ("Q. Okay. So that is the stimuli that is testing -- what you're testing is whether that stimuli is deceptive? A. Yes, whether it leads or causes consumers to form the impression that -- about the number of passwords that's the key question we're testing here.").  The fact that the control materials provide a statement about additional passwords that could be characterized as a "disclaimer" or a "disclosure" in order to net off the effects of guessing by those in the test group does not transform the FTC's theories of liability as alleged in Count VI of the Complaint.  D-Link falsely states in its motion, "As he testified to repeatedly throughout his deposition, Dr. Van Liere treated this as a 'failure to disclose' case and all of this experts opinions in the case depend on this premise." Mot. 9.  Notably absent from Defendant's briefing, however, is the fact that nowhere in the testimony to which Defendant's counsel cites, nor in any of Dr. Van Liere's testimony or expert report, for that matter, does Dr. Van Liere contend that he premises his opinion on a theory of "failure to disclose."

Counsel for D-Link raised this issue in a meet and confer with FTC counsel on August 30, 2018, and the FTC assured D-Link, orally, in writing, and most recently in a letter brief, that it is not pursing a theory of liability based on a "failure to disclose." *See* Dkt. 194 (Sept. 28, 2018).  At no point has the FTC suggested that any kind of a disclaimer in D-Link's devices, its

---

[17] *See* Dkt. 163 (Sept. 13, 2018).
[18] *See* Dkt. 194 (Sept. 28, 2018).

**FEDERAL TRADE COMMISSION'S OPPOSITION TO**       **14**
**D-LINK SYSTEMS INC.'S MOTION TO EXCLUDE THE**
**EXPERT REPORT AND OPINIONS OF DR. KENT D. VAN LIERE**
**Case No. 3:17-CV-00039-JD**

marketing materials, or on its website would be the appropriate solution to its deceptive representations about the security of its routers and IP cameras.[19]

Neither does Dr. Van Liere's expert report attempt to add new IP cameras at issue in this case. Mot. 3. The FTC previously disclosed all of the IP cameras listed in footnote 1 of Dr. Van Liere's report in Appendix A to its Initial Disclosures in March 2017. D-Link has previously briefed this issue with the Court, and the FTC has responded to D-Link orally, in writing, and most recently in a letter brief. *See* Dkt. 194 (Sept. 28, 2018).

## CONCLUSION

Dr. Van Liere provides reliable expert testimony that will "assist the [Court] to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Accordingly, the Court should deny D-Link's Motion.

Dated: October 5, 2018

Respectfully submitted,

 */s/Cathlin Tully*
Kevin H. Moriarty (D.C. Bar No. 975904)
Cathlin Tully (N.Y. Bar)
Shameka L. Walker (D.C. Bar No. 493891)
Jarad Brown (CA Bar No. 294516)
Katherine E. McCarron (D.C. Bar No. 486335)
James A. Trilling (D.C. Bar No. 467273)
Laura Riposo VanDruff (D.C. Bar No. 481785)
Federal Trade Commission
600 Pennsylvania Avenue NW, Mail Drop CC-8232
Washington, DC 20580
P: (202) 326-2949/F: (202) 326-3062
kmoriarty@ftc.gov; ctully@ftc.gov;
swalker@ftc.gov, jbrown4@ftc.gov;
kmccarron@ftc.gov; jtrilling@ftc.gov;
lvandruff@ftc.gov

---

[19] For this reason, D-Link's reliance on *FTC. v. DIRECTV*, No. 15-cv-01129-HSG, 2018 WL 3911196, at *11 (Aug. 16, 2018) is misplaced. In *DIRECTV*, the FTC alleged that the company failed to adequately disclose certain pricing terms in its advertising. *Id.* at *1. Here, however, the FTC has not alleged that D-Link's disclaimers are inadequate.

*Attorneys for Plaintiff Federal Trade Commission*