REDACTED
PUBLIC VERSION

# EXHIBIT 2

Kevin H. Moriarty (DC Bar No. 975904)
Cathlin Tully (NY Bar)
Shameka L. Walker (DC Bar No. 493891)
Jarad Brown (CA Bar No. 294516)
Katherine E. McCarron (DC Bar No. 486335)
James A. Trilling (DC Bar No. 467273)
Federal Trade Commission
600 Pennsylvania Avenue NW, Mail Drop CC-8232
Washington, DC 20580
P: (202) 326-2949/F: (202) 326-3062
kmoriarty@ftc.gov; ctully@ftc.gov; swalker@ftc.gov,
jbrown4@ftc.gov; kmccarron@ftc.gov; jtrilling@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>D-LINK SYSTEMS, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br>3:17-CV-00039-JD<br><br>**MOTION BY THE FEDERAL TRADE COMMISSION TO EXCLUDE THE TESTIMONY OF DR. PATRICK SCHAUMONT**<br><br>**Hearing Date: November 8, 2018**<br>**Hearing Time: 10:00 a.m.**<br>**Location: Courtroom 11, 19th Floor**<br><br>**ORAL ARGUMENT REQUESTED** |

1

**TABLE OF CONTENTS**

Introduction.................................................................................................................. 1

Background.................................................................................................................. 2

Legal Standard............................................................................................................ 4

Argument .................................................................................................................... 6

    I.      Dr. Schaumont Is Not an Expert in the Field of his Opinion............................. 6

    II.     Putative Opinions that Merely Parrot the Findings of a Late-Disclosed
          "Auditor" Are Not Helpful to the Finder of Fact and Are Inadmissible. ............. 9

    III.    Dr. Schaumont Assumes Facts Contrary to Evidence that Belie his Entire
          Opinion. ......................................................................................................... 10

         A.    Dr. Schaumont Assumes, Contrary to the Evidence, that All
              Identified, Pre-Release "Black Box" Vulnerabilities Were
              Remediated. ....................................................................................... 10

         B.    Dr. Schaumont Assumes, Contrary to the Evidence, that All
               Identified Pre-Release "White-Box Testing" Vulnerabilities Were
               Remediated. ....................................................................................... 11

         C.    Dr. Schaumont Assumes, Contrary to the Evidence, that All
               Devices Were Subjected to the Same Process. ...................................... 12

    IV.    Dr. Schaumont's Anticipated Testimony Would Be Cumulative and
          Unnecessary. .................................................................................................. 13

Conclusion ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Brown v. China Integrated Energy Inc.*, No. 11cv02559, 2014 WL 12576643, at *6 (C.D. Cal. Aug. 4, 2014) ................................................................................................................................. 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................................ 4

*French v. Allstate Indemnity Company*, 637 F.3d 571 (5th Cir. 2011) ...................................... 14

*Hangarter v. Provident Life & Accident Insuance Co.*, 373 F.3d 998 (9th Cir. 2004) ................ 5

*Hirata v. Southern Nevada Health District.* No. 2:13-CV-2302-LDG-VCF, 2016 WL 10706085, at *2–3 (D. Nev. May 31, 2016) ................................................................................................. 8

*Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08-00151, 2013 WL 7018657, at *2 (C.D. Cal. Nov. 5, 2013) ................................................................................................................................... 8

*Krise v. SEI/Aaron's, Inc.*, No. 1:14-CV-1209-TWT, 2017 WL 3608189, at *3 (N.D. Ga. Aug. 22, 2017) ................................................................................................................................. 5

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................................................. 4

*Lewert v. Boiron*, 212 F. Supp. 3d 917 (C.D. Cal. 2016) ............................................................ 7

*Lust v. Merrell Dow Pharmaceuticals Inc.*, 89 F.3d 594 (9th Cir. 1996) .................................... 5

*Mariscal v. Graco, Inc.*, No. 13cv02548, 2014 WL 4245949, at *7 (N.D. Cal. Aug. 27, 2014) 5, 7

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988) ................................................ 5

*Mesfun v. Hagos*, No. CV-03-02182, 2005 WL 5956612, at *18 (C.D. Cal. Feb. 16, 2005) ......... 9

*Nelson v. Matrixx Initiatives*, No. C 09-02904, 2012 WL 3627399, at *12 (N.D. Cal. Aug. 21, 2012) ....................................................................................................................................... 7

*Ollier v. Sweetwater Union High School District*, 768 F.3d 843 (9th Cir. 2014) .......................... 5

*Salinas v. Amteck of Kentucky, Inc.*, 682 F. Supp. 2d 1022 (N.D. Cal. 2010) ................................ 8

*Tyree v. Boston Scientific Corporation*, 54 F. Supp. 3d 501(S.D.W.Va. 2014) ............................ 7

*United States v. 87.98 Acres of Land More or Less in the County. of Merced*, 530 F.3d 899 (9th Cir. 2008) ........................................................................................................................ 5

*United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000) .................................................................... 4

*United States v. Rushing*, 388 F.3d 1153 (8th Cir. 2004) ............................................................. 10

*United States v. Shafi*, No. 15-CR-00582-WHO-1, 2018 WL 3159769, at *5 (N.D. Cal. June 28, 2018) ........................................................................................................................................ 9

*Volk v. United States*, 57 F.Supp.2d 888 (N.D. Cal. 1999) ............................................................. 5

*Western Parcel Express v. United Parcel Service of America, Inc.*, 65 F. Supp. 2d 1052 (N.D. Cal. 1998) ...................................................................................................................................... 5

**Rules**

Federal Rule of Evidence 403 ....................................................................................................... 14

Federal Rule of Evidence 703 ......................................................................................................... 9

Federal Rules of Evidence 702 ........................................................................................... 1, 4, 5, 7

## NOTICE OF MOTION TO EXCLUDE EXPERT TESTIMONY

On November 8, 2018, at 10:00 a.m., pursuant to Civil Local Rule 7-2, the Federal Trade Commission ("Plaintiff," "FTC," or the "Commission") will and hereby does move this Court to exclude the testimony of Dr. Patrick Schaumont in support of D-Link Systems, Inc. ("D-Link Systems") under Rule 702 of the Federal Rules of Evidence and related case law.

## INTRODUCTION

Dr. Schaumont's testimony must be excluded entirely because he is not an expert in the field in which he purports to offer an opinion: secure software development practices. Although he has distinguished academic credentials regarding the design of computer chips, he is not an expert in the practical, experiential field of engaging in, or evaluating, the practices required to develop software that is secure from vulnerabilities. Prior to his work on this matter, he had not heard of the two frameworks he claims to use to arrive at his opinions.

Dr. Schaumont's testimony also must be excluded on the separate ground that all of his conclusions rely on unsupported assumptions. In arriving at his conclusions about the "testing and remediation" of D-Link Systems' devices, Dr. Schaumont only makes observations about the *testing*, and simply assumes that the *remediation* would take place. Dr. Schaumont testified that this assumption was based on his belief that it is, in his words, "common sense" that a company would remediate vulnerabilities. This assumption, however, is contradicted by undisputed facts. It also assumes away what is a central inquiry of this case: whether D-Link Systems deceived consumers when it promised that it engaged in reasonable software development practices. Dr. Schaumont's decision to simply credit D-Link Systems as having acted reasonably, by assuming "common sense" practices, renders his entire opinion unreliable and unhelpful to the Court.

Given these extraordinary circumstances, it is appropriate for the Court to exclude Dr. Schaumont's testimony now, even though the Court will serve as the finder of fact. The FTC should not be required to refute Dr. Schaumont's unsupported testimony when it is clear *now* that he is unqualified to testify and that his conclusions are unreliable. There will be no prejudice to D-Link Systems to exclude Dr. Schaumont because (a) many of his "opinions" simply parrot

**MOTION TO EXCLUDE**
**SCHAUMONT TESTIMONY**
**CASE NO. 3:17-CV-00039-JD**

1

information found in other documents, and (b) D-Link Systems has disclosed another expert on identical subjects, rendering Dr. Schaumont's anticipated testimony cumulative.

## BACKGROUND

If trial proceeds in this matter, the FTC will establish that D-Link Systems has made various promises to consumers that the routers and IP cameras ("D-Link devices") it markets and sells are secure from unauthorized access. These promises are false and misleading. The FTC will show that the D-Link devices have many serious, foreseeable, easily-preventable, and undisputed security vulnerabilities that permit unauthorized access to D-Link routers and IP cameras. For further information, the FTC refers the Court to the Background section of the FTC's Motion for Summary Judgment, filed contemporaneously with this Motion.

In its Motion for Summary Judgment, the FTC explains that there are no genuinely disputed material facts regarding the falsity of D-Link Systems' claims regarding the security of D-Link devices.[1] If necessary, however, the FTC will present the testimony of its security expert, Mark Graff, who will opine, among other things, that D-Link Systems lacked the procedures to be able to effectively prevent or address security vulnerabilities. D-Link Systems, in turn, has disclosed two expert witnesses to offer opinions on this topic—Dr. Patrick Schaumont and Jerome Radcliffe—both of whom purport to opine on whether secure software development practices were used for D-Link devices.

The field of "secure software development" has been recognized since at least 2002, when Microsoft released its "Secure Software Development Lifecycle," which established a terminology and structure for implementing a process designed to lead to secure software systems.[2] Although there is no one "correct" way to develop software, a secure software development program has certain hallmarks that can be identified and evaluated by qualified

---

[1] See FTC's Mot. for Summ. J. on Liability on Counts 2, 3, and 6 (filed contemporaneously).
[2] Moriarty Decl. Ex.1, Graff Decl. incorporating Expert Report of Mark G. Graff, CISSP ("Graff Report") ¶ 47.

experts.[3]  Both Dr. Schaumont and the FTC's expert witness, Mr. Graff, agree that two high-profile examples of publicly-available frameworks for secure software development practices are (1) the Online Web Application Security Project (OWASP) Testing Guide[4] and (2) the Building Security In Maturity Model.[5]  The ultimate conclusion of both of Dr. Schaumont's reports is an opinion relying on BSIMM and purporting to render a favorable opinion about D-Link Systems' secure software development practices.[6]

Notwithstanding Dr. Schaumont's singular focus on the secure software development life cycle, he is not an expert in the field.  Dr. Schaumont admitted at deposition that he has never before evaluated a company's secure software development practices.[7]  He purports to have considered the OWASP Testing Guide and the BSIMM methodology to evaluate the secure software development practices for D-Link devices:

> Therefore, I considered common, industry-wide security testing and remediation measures for the period from 2012 until 2017. This includes, for example, the 'OWASP Testing Guide' from the OWASP Testing Project and the BSIMM methodology.[8]

But, incredibly, he admitted at his deposition that he *had never heard of either prior to this case*:

> Q.  Prior to your work on this matter, had you heard of the Open Web Application Security Project?
> A.  OWASP? No, I have not.[9]
> …
> Q.  When did you first learn about BSIMM?
> A.  I study [sic] it over the course of preparing for this, for my expert report.
> Q.  Have you -- had you heard about BSIMM before you wrote your expert report?

---

[3] Moriarty Decl. Ex. 2, Expert Report of Dr. Patrick Schaumont ("Schaumont Report") ¶ 71(a) ("There is no single industry standard for secure software development; instead, there are multiple sources of industry best practices companies can use.").
[4] Moriarty Decl. Ex. 1, Graff Report ¶ 54 n.55; Moriarty Decl. Ex. 2, Schaumont Report ¶ 69 n.37.
[5] Moriarty Decl. Ex. 1, Graff Report ¶ 58(a); Moriarty Decl. Ex. 2, Schaumont Report ¶ 70.
[6] Moriarty Decl. Ex. 2, Schaumont Report ¶ 114.  Moriarty Decl. Ex. 3, Rebuttal Expert Report of Dr. Patrick Schaumont ("Schaumont Rebuttal Report") ¶ 63.
[7] Moriarty Decl. Ex. 4, Schaumont Dep. 16:5-11 ("I have not evaluated secure embedded software practices of a company before.").
[8] Moriarty Decl. Ex. 2, Schaumont Report ¶ 71(a) ((citations omitted)).
[9] Moriarty Decl. Ex. 4, Schaumont Dep. 76:23-25.

MOTION TO EXCLUDE                                       3
SCHAUMONT TESTIMONY
CASE NO. 3:17-CV-00039-JD

A.  I did not.[10]

Put quite simply, Dr. Schaumont is not an expert in the field of secure software development practices.  He has never worked in this field,[11] and he has never evaluated companies in this field.[12]  Dr. Schaumont at deposition even declined to describe himself as an expert in the field of secure software development.[13]

In addition to lacking the requisite expertise, Dr. Schaumont's conclusions are predicated on several unsupportable assumptions.  For example, Dr. Schaumont blindly assumes, contrary to the undisputed facts, that all vulnerabilities *identified* during the pre-release testing of D-Link devices were also *remediated*.  At deposition, Dr Schaumont explained "my report is based on the assumption that if you get the testing report, it listed a vulnerability issue, then common sense, as a computer engineer, tells you that you need to fix that problem before shipping the product."[14]  But, his assumptions are contradicted by undisputed facts.[15]  These warrantless assumptions undercut the reliability of Dr. Schaumont's opinions.

## LEGAL STANDARD

To be admissible under Federal Rule of Evidence 702, an expert opinion must be "not only relevant but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  Reliability means the expert witness has "a reliable basis in the knowledge and experience of the relevant discipline."  *Kumho*, 526 U.S. at 149.  An expert witness qualified to testify on an analogous subject matter still may not be qualified to testify on the relevant subject matter.  *See United States v. Chang*, 207 F.3d 1169, 1172 n.2 (9th Cir. 2000) (expert in international securities not necessarily expert at identifying counterfeit international securities).

[10] *Id*. 58:14-19.

[11] *Id*. 20:7-9 ("Q.  Have you ever done consulting work in the field that you're offering an opinion in this case?  A.  No, I did not.").

[12] *Id*. 16:5-11 ("I have not evaluated secure embedded software practices of a company before.").

[13] *Id*. 12:1-13:4; 14:8-15:2.

[14] *Id*. 40:6-10.

[15] *See, e.g.*, *infra* Part III.C (Dr. Schaumont assumed certain testing was not *ad hoc* during a certain time period; but, the other proffered D-Link Systems expert described the very same testing during the very same time period as *ad hoc*).

Although Rule 702 "contemplates a broad conception of expert qualifications," *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004), the requirements are not satisfied by "peripheral contact and mere familiarity" with the subject matter on which opinions will be offered.  *Brown v. China Integrated Energy Inc.*, No. 11cv02559, 2014 WL 12576643, at *6 (C.D. Cal. Aug. 4, 2014) (internal quotation marks omitted).  The party offering the expert's opinions has the burden to prove such qualifications. *United States v. 87.98 Acres of Land More or Less in the County. of Merced*, 530 F.3d 899, 904 (9th Cir. 2008); *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

"[I]t is a proper exercise of the Court's discretion to exclude witness testimony that is based on 'unsupported assumptions and unsound extrapolation.'"  *Mariscal v. Graco, Inc.*, No. 13cv02548, 2014 WL 4245949, at *7 (N.D. Cal. Aug. 27, 2014) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988)).  "When expert opinions are not supported by sufficient facts, or when the indisputable record contradicts or otherwise renders the opinions unreasonable, they cannot be relied upon."  *W. Parcel Express v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1060 (N.D. Cal. 1998).  The party offering the expert testimony bears the burden of establishing the reliability of the assumptions.  *Krise v. SEI/Aaron's, Inc.*, No. 1:14-CV-1209-TWT, 2017 WL 3608189, at *3 (N.D. Ga. Aug. 22, 2017) ("If the expert predicates his testimony on an assumption that is belied by the evidence, the expert's testimony is properly excluded.  The party offering the expert's testimony has the burden to prove it is admissible by a preponderance of the evidence." (citations omitted)).

Even though "the Daubert gatekeeping obligation is less pressing in connection with a bench trial," *Volk v. United States*, 57 F.Supp.2d 888, 896 n. 5 (N.D. Cal. 1999), it is nonetheless proper for a Court to exclude the expert testimony when it is unreliable and unsupported by the facts.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (excluding expert witnesses at a bench trial because conclusions were based on personal opinions and speculation rather than on a systematic assessment of the facts).

## ARGUMENT

Dr. Schaumont's credentials have nothing to do with the field in which he has offered an opinion. He admitted his *bona fide* expertise is in an ancillary field, that he is only "familiar" with the concepts at issue in this case, and that he did not know information central to his conclusions prior to his engagement. Key aspects of Dr. Schaumont's report merely parrot the conclusions of a third party, with no added analysis. Moreover, Dr. Schaumont admitted to making assumptions contrary to undisputed facts, rendering his opinion unreliable and unhelpful to the trier of fact. Finally, Dr. Schaumont's anticipated testimony is cumulative of another D-Link Systems' expert's testimony, and can be excluded for that reason alone.

## I.     Dr. Schaumont Is Not an Expert in the Field of his Opinion.

D-Link Systems proffers Dr. Schaumont as a putative expert capable of offering an opinion in this case regarding whether the secure software development practices for D-Link devices were reasonable. This is an opinion that requires expertise in understanding and evaluating how companies develop software. Dr. Schaumont has no such expertise. Rather, Dr. Schaumont's credentials relate to an entirely separate field—the design of cryptographically secure hardware and software on embedded systems.

Dr. Schaumont does not claim to be an expert, or even experienced, in secure software development.[16] He admits that he lacks experience and expertise in: (a) evaluating a company's secure software development practices; and (b) knowing what practices are involved in developing secure software.[17] Instead, he describes his knowledge of the practices relevant to this case as a mere "familiarity."[18] An expert's passing familiarity with the subject matter of an expert opinion does not constitute expertise, no matter how expert he may be in related fields.

---

[16] *Id.* 12:1-13:4. Dr. Schaumont's reluctance is not false modesty. He readily admits expertise in other fields. *Id.* 12:22-13:2 ("I am an expert in the design of embedded systems and secure systems, secure embedded systems, which include embedded software as well as secure embedded software.").

[17] *Id.* 12:1-13:4.

[18] *Id.* 12:8-14 ("Q. Are you an expert in evaluating companies' secure software development practices? A. I am familiar with software development practices, I am familiar with secure software and embedded software, and as a result, I understand the practices which are being applied by companies that develop secure embedded software.").

1    *See, e.g., Tyree v. Boston Sci. Corp.*, 54 F. Supp. 3d 501, 551 (S.D.W.Va. 2014), *as amended*

2    (Oct. 29, 2014) (distinguished medical professional's "familiarity" with pharmaceutical labels

3    inadequate to qualify for expert testimony regarding adequacy of product warnings).

4         Dr. Schaumont's assertion that he "understand[s] the practices,"[19] based on his tangential

5    experience, does not qualify him to assist the finder of fact as an expert witness pursuant to Rule

6    702.  *See Mariscal*, 2014 WL 4245949, at *7 (excluding workplace safety expert in case

7    involving consumer eye protection, notwithstanding attorney claim that "human eyeballs are

8    alike").  The capacity to "understand" a field, due to background in an ancillary field, is

9    inadequate to satisfy Rule 702.  *Nelson v. Matrixx Initiatives*, No. C 09-02904, 2012 WL

10   3627399, at *12 (N.D. Cal. Aug. 21, 2012) (excluding ear, nose, and throat medical expert from

11   case involving loss of smell, due to lack of expertise in toxicology); *Lewert v. Boiron*, 212 F.

12   Supp. 3d 917, 936 (C.D. Cal. 2016) (doctor who was qualified to discuss efficacy of treatments

13   was excluded from testifying about reliability of studies, due to lack of expertise in statistics).

14        Dr. Schaumont's lack of expertise in the field is on stark display with his lack of

15   familiarity with the Building Security In Maturity Model (BSIMM) measurement tool.  He

16   admits that BSIMM "is known to be industry state of the art"[20] and purports to assess D-Link's

17   practices using the tool.[21]  However, prior to his engagement with D-Link Systems, and prior to

18   writing his report, Dr. Schaumont had never heard of the BSIMM:

19            Q.  Have you -- had you heard about BSIMM before you wrote
                 your expert report?
20            A.  I did not.[22]

21   Thus, Dr. Schaumont's own testimony establishes his lack of expertise—he was unaware of a

22   tool that he calls "state of the art" in the field in which he is offering an opinion.  *See Kingsbury*

23

24   [19] *Id.* 12:8-14 ("Q.  Are you an expert in evaluating companies' secure software development practices?"  A.  I am
     familiar with software development practices, I am familiar with secure software and embedded software, and as a
25   result, I understand the practices which are being applied by companies that develop secure embedded software.").
     [20] *Id.* 96:22.
26   [21] Moriarty Decl. Ex. 2, Schaumont Report ¶ 114.
     [22] Moriarty Decl. Ex. 4, Schaumont Dep. 58:17-19.  Needless to say, Dr. Schaumont also had never seen a BSIMM
27   measurement report, which is the work product that arises out of using BSIMM, prior to this case.  *Id.* 76:20-22.

28   **MOTION TO EXCLUDE**                              7
     **SCHAUMONT TESTIMONY**
     **CASE NO. 3:17-CV-00039-JD**

1   *v. U.S. Greenfiber, LLC*, No. CV 08-00151, 2013 WL 7018657, at *2 (C.D. Cal. Nov. 5, 2013)

2   (excluding expert in real estate disclosures in case involving Cocoon insulation who "had never

3   heard of Cocoon insulation prior to becoming familiar with this case . . . . Even if Beardmore is

4   generally aware of disclosure requirements with respect to the sale of real estate, he has no basis

5   to opine on disclosures relating to this particular insulation product."); *see also Salinas v. Amteck*

6   *of Kentucky, Inc.*, 682 F. Supp. 2d 1022, 1030 (N.D. Cal. 2010) (excluding expert where expert

7   lacked the professional training and expert qualification to offer an opinion in the narrow field of

8   consumer warnings).[23]  Due to Dr. Schaumont's lack of familiarity with BSIMM, his opinion on

9   this subject matter is unhelpful to the Court in understanding the evidence or determining a fact

10  in issue.[24]

11          Because Dr. Schaumont lacks the requisite experience and expertise, his testimony

12  should be excluded.  *See also Hirata v. Southern Nevada Health District*.  No. 2:13-CV-2302-

13  LDG-VCF, 2016 WL 10706085, at *2–3 (D. Nev. May 31, 2016).  In *Hirata*, the Court excluded

14  the testimony of an "accomplished professional" who was qualified to testify to the "quality and

15  thoroughness of the Health District's pool inspections."  *Id.* at *2.  In her report, however, the

16  expert strayed from her core expertise to opine that defendant Health District (which conducted

17  the pool inspections) suffered from a "toxic" workplace and "unrealistic" job expectations.  *Id.*

18  Such opinions, however, required an expertise in "human resources or human resources

19  management," which was beyond her expertise.  *Id.*  Similarly, in this case, Dr. Schaumont

20  strays from his expertise in the *design* of secure embedded systems to discuss a superficially

21  related, but entirely separate field:  The *process* of developing software securely.  *Cf. id.*

22  ("Osinski's general aquatics expertise does not qualify her to testify on the Health District's

---

[23] Because BSIMM is indisputably a well-known tool in the field, Dr. Schaumont's lack of familiarity with BSIMM disqualifies his entire opinion.  At the very least, his lack of familiarity with this tool disqualifies the following of his opinions that rely on his BSIMM conclusions:  Moriarty Decl. Ex. 2, Schaumont Report ¶¶ 70-72, 82, 94-96, 99, 114; Moriarty Decl. Ex. 3, Schaumont Rebuttal Report ¶¶ 3-6, 13, 14, 57, 63.

[24] One concrete example of the unhelpfulness of Dr. Schaumont's opinion is that he testified that he believed BSIMM had been "implemented" or "adopted," but he was not sure that it was being used:  "I do not know whether or not they are using BSIMM."  Moriarty Decl. Ex. 4, Schaumont Dep. 166:21-167:2.

1    management and human resources problems.").  Accordingly, Dr. Schaumont's testimony is

2    outside his expertise and the Court must exclude it.

3    **II.    Putative Opinions that Merely Parrot the Findings of a Late-Disclosed "Auditor"**
      **Are Not Helpful to the Finder of Fact and Are Inadmissible.**

4

5            Dr. Schaumont's BSIMM-related testimony must be excluded for the separate reason

6    that, in his discussion of the BSIMM audits, he merely parrots a third party's opinions.[25]  For

7    example, Dr. Schaumont quotes the audit conclusions at length[26] and then opines that the

8    "audit results for BSIMM demonstrate that the methodology is successfully deployed."[27]

9    When questioned about the BSIMM audit section of his expert report, Dr. Schaumont testified

10   that he had taken no steps to independently validate any of the conclusions or opinions in the

11   BSIMM audit.[28]  Because Dr. Schaumont has not provided (and cannot provide, due to his lack

12   of qualifications) any expert analysis of the BSIMM audits,[29] his hearsay testimony repeating

13   the findings of the BSIMM audits should also be excluded.  *United States v. Shafi*, No. 15-

14   CR-00582-WHO-1, 2018 WL 3159769, at *5 (N.D. Cal. June 28, 2018) ("An expert may not

15   serve simply as a conduit for introducing hearsay under the guise that the testifying expert used

16   the hearsay as the basis of his testimony." (internal quotations omitted)); *see also Mesfun v.*

17   *Hagos*, No. CV-03-02182, 2005 WL 5956612, at *18 (C.D. Cal. Feb. 16, 2005) ("Rule 703

18   does not

19

20   [25] Moriarty Decl. Ex. 2, Schaumont Report ¶ 96 (quoting audits at length).  D-Link Systems' late disclosure of these
     audits was the subject of a motion for relief by the FTC under Fed. R. Civ. P. 37.  (Dkt. No. 150.)  The Court
21   ordered D-Link Systems to respond to additional fact discovery.  (Dkt. No. 157.)  D-Link Systems subsequently
     produced 30,000 documents, comprising more than 120,000 pages, of largely irrelevant, disorganized materials,
22   claiming that they were unable to review for responsiveness or relevance due to time constraints.  (Dkt. No. 169
     (describing production).)  The FTC decided against re-visiting D-Link Corporation's abusive discovery tactics in
     another round of discovery briefing, because Dr. Schaumont's discussion of the audits is excludable on Rule 702
23   grounds.  (Dkt. No. 169.)

     [26] Moriarty Decl. Ex. 2, Schaumont Report ¶ 96.
24
     [27] *Id.* ¶ 99.  Even if the audits were credible, at best they conclude that D-Link Corporation had "implemented"
     BSIMM by November 2017 – nearly a year *after* the FTC sued D-Link Systems.
25
     [28] Moriarty Decl. Ex. 4, Schaumont Dep. 168:8-15 (did not talk to auditors or interviewees); 173:20-21 (did not
     review service level agreement reference in audit); 178:8-15 (did not review responses to vendor questionnaires
26   referenced in audit); 168:16-169:8 (could not say whether he was even capable of independently evaluating BSIMM
     implementation).

27   [29] Prior to this case, Dr. Schaumont had never before seen a BSIMM audit.  *Id.* 76:17-19.

28   **MOTION TO EXCLUDE**                                9
     **SCHAUMONT TESTIMONY**
     **CASE NO. 3:17-CV-00039-JD**

permit an expert witness to circumvent the rules of hearsay by testifying to the opinions of other experts.") (collecting cases).

## III.    Dr. Schaumont Assumes Facts Contrary to Evidence that Belie his Entire Opinion.

Dr. Schaumont's opinions should be excluded for the separate reason that he makes assumptions expressly contradicted by the facts of this case. *See, e.g.*, *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004) ("Expert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable.").

### A.    Dr. Schaumont Assumes, Contrary to the Evidence, that All Identified, Pre-Release "Black Box" Vulnerabilities Were Remediated.

D-Link Systems intends to present Dr. Schaumont to offer testimony that the pre-release testing and remediation of D-Link devices were reasonable.[30]  Dr. Schaumont based his conclusion on his observations regarding the *testing* practices.  Importantly, however, Dr. Schaumont never discusses in his report any *remediation* of vulnerabilities D-Link Systems identified through so-called "black-box testing" prior to the release of D-Link devices.[31] At deposition, Dr Schaumont explained "my report is based on the *assumption* that if you get the testing report, it listed a vulnerability issue, then common sense, as a computer engineer, tells you that you need to fix that problem before shipping the product."[32]  Dr. Schaumont even repeated this false premise at when he was examined by D-Link Systems' counsel at deposition:

> [Mr. Schopf]  Q. Yes. We -- there was a question before -- earlier today, a reference to whether all potential vulnerabilities that are identified in testing were addressed.
> A. Um-hum.
> [Mr. Schopf]  Q. Did you understand that to mean *every single potential vulnerability* identified was addressed?
> A. That is correct.[33]

---

[30] *See, e.g.*, Moriarty Dec. Ex. 2, Schaumont Report at Part VI (section titled "Reasonable Testing and Remediation Measures Are Used to Protect and Improve D-Link Systems' Consumer IP Routers and Consumer IP Cameras"). [31]

Black box testing refers to the testing of completed software, typically by providing various inputs and evaluating the behavior of the software.  Moriarty Decl. Ex. 2, Schaumont Report ¶ 67.

[32] Moriarty Decl. Ex. 4, Schaumont Dep. 40:1-10 (emphasis added).

[33] *Id*. 230:4-11 (emphasis added).

**MOTION TO EXCLUDE**                                     10
**SCHAUMONT TESTIMONY**
**CASE NO. 3:17-CV-00039-JD**

1    The undisputed facts are that Dr. Schaumont's assumption is false:  D-Link Systems'

2    <span style="color:red">REDACTED</span>

8    D-

9    Link Systems' other proffered security expert, Jerome Radcliffe, who was then acting as

10   consultant to D-Link Systems,   <span style="color:red">REDACTED</span>

11   These undisputed facts contradict Dr. Schaumont's

12   foundational assumptions, and so his opinions regarding D-Link Systems' remediation

13   practices should be excluded as unreliable and unhelpful to the trier of fact in understanding the

14   evidence or determining a fact in issue.

15        **B.    Dr. Schaumont Assumes, Contrary to the Evidence, that All Identified Pre-
16        Release "White-Box Testing" Vulnerabilities Were Remediated.**

17        Dr. Schaumont makes the same faulty assumption regarding D-Link Systems'

      remediation of vulnerabilities identified during pre-release automated code scanning,[38] or

18    "white-box testing."  Here, again, Dr. Schaumont asserts that he assumes D-Link

19    Systems remediated vulnerabilities identified prior to release through white-box testing:

---

[34] The FTC also alleges, and Mr. Graff's opinion establishes, that the testing was inadequate, as well.  This section of the brief, however, is concerned only with remediation.

[35] Moriarty Decl. Ex. 5, Vulnerability Spreadsheet (Feb. 12, 2015) (DKC0501497) (spreadsheet reflecting decisions not to remediate many vulnerabilities identified in pre-release testing).

[36] *See* Federal Trade Commission's Mot. for Summ. J. on Liability on Counts 2, 3, and 6 (filed contemporaneously) at Part IV.A.2 ("In at least two known instances, D-Link actually was on notice of the well-known, foreseeable, and easily-preventable vulnerabilities on D-Link devices before it marketed and sold them in the United States.").

[37]      cl. Ex. 6,   <span style="color:red">REDACTED</span>

[38] Automated code scanning testing involves testing the source code for vulnerabilities, and is characterized in Dr. Schaumont's report as "white-box testing."  Moriarty Decl. Ex. 2, Schaumont Report ¶ 67.

**MOTION TO EXCLUDE**                          11
**SCHAUMONT TESTIMONY**
**CASE NO. 3:17-CV-00039-JD**

> Q. So are you -- you are not offering an opinion that the
> vulnerabilities identified through source code scanning reports
> prerelease were actually remediated, correct?
> MR. SCHOPF: Objection. Vague.
> THE WITNESS: So I made that assumption that they will have
> been addressed or fixed.
> BY MR. MORIARTY:
> Q. What is your assumption based on?
> A. The common practice in my field, that you do not ship buggy
> products.[39]

In a moment of reflection, Dr. Schaumont himself remarked that he was unsure of the veracity of his assumption : "I am not sure whether these vulnerabilities -- well, whether these products have been shipped based on the source codes shown exactly as shown here."[40]  And, indeed, the evidentiary record demonstrates that Dr. Schaumont's assumption about D-Link Systems'

REDACTED

Dr. Schaumont's baseless assumption regarding D-Link Systems'

REDACTED

should be excluded as unreliable and unhelpful to the trier of fact in understanding the evidence or in determining a fact in issue.

**C.    Dr. Schaumont Assumes, Contrary to the Evidence, that All Devices Were Subjected to the Same Process.**

The undisputed fact evidence demonstrates that D-Link Systems' testing and remediation processes failed because the company's processes were *inconsistent across a variety of D-Link*

---

[39] Moriarty Decl. Ex. 4, Schaumont Dep. 39:8-18.
[40] *Id*. 224:25-225:2.  When pressed, Dr. Schaumont claimed he was offering no opinion on whether those vulnerabilities were remediated.  *Id*. 225: 3-6.
[41] Moriarty Decl., Ex. 7,                                    REDACTED

1    *devices*.  In other words, not only did the developers of D-Link devices fail to remediate

2    vulnerabilities, as discussed above, but they engaged in inconsistent testing practices.

3           At his deposition, Dr. Schaumont testified that all the devices on Appendix A were tested

4    the same way[42]:  "They cannot afford to give one product a differential treatment from another

5    product.  All of them needs [sic] to have the same quality standard."[43]  Later, Dr. Schaumont

6    rejected the premise that any testing may have been *ad hoc*:

7                    Q.  Do you have any reason to think that D-Link Corporation
                    simply engaged in ad hoc black-box testing prior to 2014?
8                    MR. SCHOPF:  Objection.  Calls for speculation.  Outside the
                    scope.
9                    THE WITNESS:  No.  They are a company that wants to build --
10                   in my -- from my -- based on my evaluation, they are a company
                    that wants to build products that work and that do not have security
11                   issues.[44]

12          Again, Dr. Schaumont's assumptions are entirely contrary to fact.  D-Link's *other* expert

13   witness, Mr. Jerome Radcliffe, confirmed this in his expert report.  Mr. Radcliffe's report

14   explains, in a statement regarding black-box testing by the third-party hired by D-Link

15   Corporation: "I understand that D-Link Corporation previously used this entity [Onward/III]

16   (and others) to test products, ***but on a more ad hoc basis***."[45]  Accordingly, Dr. Schaumont's

17   opinions regarding D-Link Systems' testing processes must be excluded because they rely on

18   assumptions that are contradicted by undisputed facts.

19   **IV.    Dr. Schaumont's Anticipated Testimony Would Be Cumulative and Unnecessary.**

20          The testimony of Dr. Schaumont can be excluded without prejudice to D-Link Systems

21   because the subject matter of his testimony is cumulative of the testimony D-Link Systems

22

23

---

24   [42] Moriarty Decl. Ex. 4, Schaumont Dep. 238:13-241:19.
25   [43] *Id*. 238:13-239:12.
     [44] *Id*. 240:22-241:5.
26   [45] Moriarty Decl. Ex. 8, Expert Report of Jerome Radcliffe, Appendix B, Decl. of Jerome Radcliffe ("Radcliffe
     Report Decl.") ¶ 11 (emphasis added).  Mr. Radcliffe affirmed this determination in his deposition:  "Is it still your
     understanding that prior to the middle of 2014, D-Link Corporation used III/Onward on a more ad hoc basis?  A.
27   That is what I wrote, yes, and that is what I understand."  Moriarty Decl. Ex. 9, Radcliffe Dep. 106:15-25.

28   **MOTION TO EXCLUDE**                              13
     **SCHAUMONT TESTIMONY**
     **CASE NO. 3:17-CV-00039-JD**

1   intends to introduce through Mr. Jerome Radcliffe.[46]  Although Dr. Schaumont and Mr.

2   Radcliffe have different backgrounds, both render the opinion that D-Link Systems engaged in

3   reasonable security practices.[47]  Accordingly, the subject matter of the putative experts'

4   testimony is cumulative.  Fed. R. Evid. 403.  "Under Rule 403, evidence, though relevant, may

5   be excluded if its probative value is substantially outweighed "by considerations of . . . needless

6   presentation of cumulative evidence."  *French v. Allstate Indem. Co.*, 637 F.3d 571, 578 (5th Cir.

7   2011); *id.* (the court has wide discretion to exclude cumulative expert testimony "particularly

8   when the court sits as trier of fact, for [it] is then in the best position to know whether expert

9   testimony would help [it] understand the case." (internal quotation marks and citations omitted)).

### CONCLUSION

11        Dr. Schaumont is not an expert in the field of secure software development practices, and

12   parts of his opinion constitutes uncritical recitation of audits with which he has no experience.

13   Dr. Schaumont's putative opinions rely on baseless assumptions that are contrary to undisputed

14   evidence, and his anticipated testimony is cumulative of the testimony of another of D-Link

15   Systems' expert witness.  This Court should exclude Dr. Schaumont's testimony in its entirety.

---

[46] The FTC is not seeking to limit or exclude the testimony of Mr. Radcliffe at this time.

[47] *See* Moriarty Decl. Ex. 2, Schaumont Report ¶¶ 112-114; Moriarty Decl. Ex. 8, Radcliffe Report Decl. ¶ 4.

Dated:   September 21, 2018

Respectfully submitted,

   /s/ Kevin H. Moriarty

Kevin H. Moriarty (DC Bar No. 975904)
Cathlin Tully (NY Bar)
Shameka L. Walker (DC Bar No. 493891)
Jarad Brown (CA Bar No. 294516)
Katherine E. McCarron (DC Bar No. 486335)
James A. Trilling (DC Bar No. 467273)
Federal Trade Commission
600 Pennsylvania Avenue NW, Mail Drop CC-8232
Washington, DC 20580
P: (202) 326-2949/F: (202) 326-3062
kmoriarty@ftc.gov; ctully@ftc.gov;
swalker@ftc.gov, jbrown4@ftc.gov;
kmccarron@ftc.gov; jtrilling@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*