REDACTED
PUBLIC VERSION

# EXHIBIT 5

ALDEN F. ABBOTT
GENERAL COUNSEL
Kevin H. Moriarty (D.C. Bar No. 975904)
Cathlin Tully (NY Bar)
Shameka L. Walker (D.C. Bar No. 493891)
Jarad A. Brown (Ca. Bar No. 294516)
Katherine E. McCarron (D.C. Bar No. 486335)
James A. Trilling (D.C. Bar No. 467273)
Federal Trade Commission
600 Pennsylvania Avenue NW, Mail Drop CC-8232
Washington, DC 20580
P: (202) 326-2949/F: (202) 326-3062
kmoriarty@ftc.gov; ctully@ftc.gov; swalker@ftc.gov;
jbrown4@ftc.gov; kmccarron@ftc.gov; jtrilling@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>D-LINK SYSTEMS, INC.,<br><br>Defendant. | No. 3:17-CV-00039-JD<br><br>**FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY ON COUNTS 2, 3, AND 6**<br><br>Hearing Date:  November 8, 2018<br>Hearing Time:  10:00 a.m.<br>Location: Courtroom 11, 19th Floor<br><br>Judge:  Hon. James Donato |

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................I

TABLE OF AUTHORITIES............................................................................................II

NOTICE OF MOTION FOR SUMMARY JUDGMENT ......................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................... 2

III.    LEGAL STANDARD ............................................................................ 4

    A.    Summary Judgment Standard .................................................. 4

    B.    Elements of Deception Under the FTC Act ............................... 4

        1.    Determining What Claims Are Made in the Representations......... 5

        2.    Determining Whether the Claims Were Likely to Mislead ........... 5

        3.    Determining Whether the Claims Are Material............................ 5

IV.    LIABILITY ARGUMENT ...................................................................... 6

    A.    D-Link's Security Event Response Policy ("SERP") Claims
        Violate the FTC Act (Count 2; Complaint Exhibit 1)................................. 6

        1.    D-Link Claims It Engaged in Particular Software Security
            Practices in Its SERP. ..................................................... 7

        2.    D-Link's SERP Was Likely to Mislead Because D-Link
            Did Not Engage in the Claimed Software Security
            Practices. ................................................................. 9

        3.    D-Link's SERP Claims Are Material Because They Are
            Express and Because Security Is a Central Characteristic of
            Routers and IP Cameras. ........................................... 13

    B.    D-Link's Router Brochures Claims Violate the FTC Act (Count 3;
        Complaint Exhibits 2-5)................................................... 15

        1.    D-Link Router Brochures Promoted the High Quality of
            Their Security.......................................................... 15

        2.    D-Link's Router Brochures Claims Are Likely to Mislead
            Because the Routers Were Not Secure from Basic Threats.......... 20

        3.    D-Link's Router Brochures Claims Are Material Because
            They Are Express and Refer to Central Characteristics of
            Routers. ................................................................. 21

    C.    D-Link's IP Camera Interface Claims Violated the FTC Act
        (Count 6; Complaint Exhibits 10-11) ................................... 22

        1.    D-Link Made Claims in Its IP Camera Interface that Setting
            a Password Would Secure the Device. .............................. 22

        2.    D-Link's IP Camera Interface Claims Are Likely to
            Mislead Because the Devices Had Another Secret
            Password that Could Be Used Maliciously for
            Unauthorized Access. ................................................ 23

        3.    D-Link's IP Camera Interface Claims Are Material
            Because They Are Express and Because They Relate to a
            Central Characteristic of IP Cameras............................. 24

CONCLUSION ............................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................... 4, 5

*Cliffdale Assocsiates*, *Inc.*, 103 F.T.C. 110 (1984) ........................................... 5, 6, 7, 16

*Commerce Plane*t, 878 F. Supp. 2d 1048 (C.D. Cal. 2012)........................................... 5

*FTC v. AMG Services, Inc.*, 29 F. Supp. 3d 1338 (D. Nev. 2014)................................. 6

*FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965)..................................................... 5

*FTC v. Cyberspace.com, LLC*, 453 F.3d 1196 (9th Cir. 2006).......................... 6, 8, 16

*FTC v. Figgie International, Inc.*, 994 F.2d 595 (9th Cir.1993)..................................... 6

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999) ...................................................... 6

*FTC v. Medlab*, 615 F. Supp. 2d 1068 (N.D. Cal. 2009) ....................................... 9, 24

*FTC v. Mortgage Relief Advocates LLC*, No. CV-14-5434-MWF (AGRx), 2015 WL 11257575,
  at *2 (C.D. Cal. July 1, 2015) ........................................................................... 7, 15

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)....................................... passim

*FTC v. QT, Inc.*, 448 F. Supp. 2d 908 (N.D. Ill. 2006)................................................. 7

*FTC v. US Sales Corp.*, 785 F. Supp. 737 (N.D. Ill. 1992) .......................................... 5

*Kraft, Inc. v. FTC,* 970 F.2d 311 (7th Cir. 1992)......................................................... 5

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) ............... 4

*Resort Car Rental Systems, Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975) ........................ 6

*Simeon Mangement Corp. v. FTC*, 579 F.2d 1137 (9th Cir. 1978) ...................... 6, 9, 24

*Thompson Medical Co., Inc.*, 104 F.T.C. 648 WL 565377, at *102 (1984) (FTC).............. 14, 21

**Statutes**

15 U.S.C. § 45(a) (2012)......................................................................................... 1, 4

**Rules**

FEDERAL RULES OF CIVIL PROCEDURE 56(a) ............................................................... 4

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

On November 8, 2018, at 10:00 a.m., pursuant to Federal Rule of Civil Procedure 56, the Federal Trade Commission ("FTC") will move this Court for summary judgment against D-Link Systems, Inc., for violations of Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a) (2012).

The FTC respectfully requests this Court to grant summary judgment against Defendant as to liability on all three counts remaining in this case. As explained below, the FTC has established sufficient material facts, about which there is no genuine dispute, to support a finding that Defendant is liable as a matter of law. The FTC has attached a proposed order granting summary judgment as to liability and ordering additional briefing on injunctive relief.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

D-Link Systems, Inc. ("D-Link") promises consumers that the software on D-Link routers and IP cameras is secure from unauthorized access. D-Link has made these promises on its website, on its brochures advertising its routers, and in the consumer interface for its IP cameras. These promises are false and misleading. D-Link routers and IP cameras have many serious, foreseeable, easily preventable, and undisputed security vulnerabilities that permit unauthorized access to these devices.

The vulnerabilities in D-Link routers and IP cameras reflect real threats to consumers' privacy and security. Because these vulnerabilities exist on devices that are the digital and physical gateway into the home, they afford criminals the opportunity to invade consumers' privacy and steal their personal information. Cybercriminals often target vulnerable routers to access consumers' personal information, commit fraud, and to use the routers as "bots" to mask the origin of criminal attacks launched across the Internet. Cybercriminals target Internet-connected devices to surveil activities inside consumers' homes.

---

[1] The FTC believes that broad injunctive relief is appropriate, but that is beyond the scope of this motion. Accordingly, the FTC has attached a proposed order reflecting a finding of liability. The scope of injunctive relief to protect consumers from D-Link's practices violating the FTC Act is properly the subject matter of separate briefing.

A trial is unnecessary in light of the undisputed record.  D-Link does not dispute that it made the representations at issue.  There is no genuine dispute that D-Link routers and IP cameras have contained serious, foreseeable, and easily preventable vulnerabilities permitting unauthorized access; that D-Link knew of these vulnerabilities; and that D-Link sold and marketed these devices as secure anyway.  Further, there is no genuine dispute that D-Link's representations regarding the security of its devices are material to consumers.

## II.     FACTUAL BACKGROUND

D-Link is a California-based corporation that markets and sells IP cameras that connect to the Internet ("D-Link cameras") and routers ("D-Link routers") under the D-Link brand (collectively, "D-Link devices").  D-Link Corporation is the Taiwanese-based parent corporation to D-Link.  In its Complaint, the FTC alleges that D-Link deceived consumers when it promised, then failed, to take reasonable steps to protect D-Link devices[2] from unauthorized access.[3]

The Complaint alleges that D-Link, has made a series of misrepresentations to U.S. consumers regarding the security of D-Link devices.  Specifically, D-Link:

- published a "Security Event Response Policy" on its website, that touted the fact that D-Link "prohibited" features, such as undocumented account credentials and backdoors, that would allow unauthorized access on D-Link devices (Count 2);[4]

---

[2] Brown Decl. Ex. 1, App. A to Pl.'s Fourth Am. Initial Disclosures (identifying the routers and IP cameras that are at issue in this case).

[3] Compl. for Perm. Inj. and Other Equitable Relief ("FTC Compl.") (Mar. 20, 2017) ¶ 15 (Dkt. No. 44).  The original complaint also named D-Link Corporation.  Notwithstanding the central role D-Link Corporation plays in developing D-Link devices, the FTC agreed to dismiss D-Link Corporation for two reasons.  First, D-Link accepted responsibility for the relevant secure software development practices when it represented to this Court that "D-Link Systems is responsible for addressing any potential security vulnerabilities for any products that are sold by D-Link Systems in the United States."  Brown Decl. Ex. 15, Decl. of William Brown in Supp. of D-Link Corp.'s Mot. to Dismiss ¶ 25 (Apr. 3, 2017) (Dkt. No. 50-2).  Second, based on D-Link's representations to this Court, the FTC is satisfied that this Court would be able to fashion injunctive relief sufficient to protect consumers from the sale and marketing by D-Link of routers and IP cameras that are not secure from unauthorized access.

[4] Brown Decl. Ex. 2, FTC Compl. Ex. 1 ("PX 1").

- marketed its routers as providing "advanced" network security or being "one of the safest" routers that are secure from unauthorized access (Count 3);[5] and,
- represented to consumers through a graphical user interface that setting a password would secure certain D-Link IP cameras from unauthorized access (Count 6).[6]

Contrary to these assurances, and as explained in the Liability Argument at Section IV, D-Link did little to try to develop devices that were secure from well-known, preventable vulnerabilities.[7] ██████████████████████████████████████ ██████████████████████ ██████████████████████████ ████████████████████████████████████████████ As a result, even those devices that D-Link blithely promoted as among the "safest"[10] and with "great"[11] network security were regularly released with well-known and preventable security vulnerabilities.[12]

████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████ A top executive of D-Link readily admits, for example, that █████████████████████████████ Worse, it is undisputed that D-Link looked the other way while its primary online distributors continued to sell D-Link IP cameras that D-Link *knew* had dangerous backdoors that permitted a third party to

---

[5] Brown Decl. Ex. 3, FTC Compl. Exs. 2-5 ("PX 2-5").
[6] Brown Decl. Ex. 4, FTC Compl. Exs. 10-11 ("PX 10-11"). The FTC's original complaint included three additional counts, which the Court dismissed on D-Link's motion to dismiss. FTC Compl. ¶¶ 28-29, 37-42; Order on Mot. to Dismiss (Sept. 19, 2017) (Dkt. No. 90).
[7] *See* Section IV. A.2., B.2., C.2.
[8] *Id.*
[9] *Id.*
[10] *See* Brown Decl. Ex. 4, FTC Compl. Ex. 5 ("PX 5").
[11] *See* Brown Decl. Ex. 4, FTC Compl. Ex. 2 ("PX 2").
[12] *See* Section IV. A.2., B.2., C.2.
[13] *Id.*
[14] *See* Brown Decl. Ex. 5, Wang Dep. 174:4-16 (██████████████████████████ ██████████████████████████ .

view the feed with the easily-guessed credentials of username "guest" and password "guest."[15]
Instead of developing set-up software that would require an update to fix this vulnerability, D-Link pushed out updates only to consumers who separately signed up for D-Link's "mydlink cloud" service.[16]  And, instead of warning consumers or recalling these cameras, D-Link did the opposite:  It published its Security Event Response Policy, promising consumers that such backdoors were "prohibited," and were given the "highest priority."[17]

There is no genuine issue as to these facts and, for these reasons alone, summary judgment is appropriate as to all remaining counts.[18]

## III.    LEGAL STANDARD

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A party moving for summary judgment must show the absence of a genuine dispute as to any material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the opposing party to designate "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.

### B.    Elements of Deception Under the FTC Act

An act or practice is deceptive pursuant to 15 U.S.C. § 45(a) (2012) if "**first**, there is a representation, omission, or practice that, **second**, is likely to mislead consumers acting reasonably under the circumstances, and **third**, the representation, omission, or practice is

---

[15] *See* Section IV. A.2.
[16] *Id.*
[17] *See* Brown Decl. Ex. 4, FTC Compl. Ex. 1 ("PX 1").
[18] As set forth below, there are sufficient undisputed facts <u>now</u> to support summary judgment.  If this matter proceeds to trial, however, the FTC will present additional facts to support a finding of liability, including that that D-Link's software development program was not capable of preventing serious, well-known, foreseeable, and easily preventable vulnerabilities.

material." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) (quoting and adopting

standard in *Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 164–65 (1984)) (emphasis added).

### 1.    Determining What Claims Are Made in the Representations

To establish deception, the FTC must first demonstrate that D-Link made the challenged

representations.  No additional facts are necessary to interpret the language of the statements

themselves:  the Court can simply read the D-Link's statements to understand their meaning.

*FTC v. US Sales Corp.*, 785 F. Supp. 737, 745 (N.D. Ill. 1992) (citing *FTC v. Colgate-Palmolive

Co.*, 380 U.S. 374 (1965)).  The Court does not need a consumer survey or other extrinsic

evidence to support a finding that a representation violates Section 5 of the FTC Act; a facial

analysis is sufficient.  *Kraft, Inc. v. FTC,* 970 F.2d 311, 318-19 (7th Cir. 1992); *see also

Commerce Plane*t, 878 F. Supp. 2d 1048, 1068 (C.D. Cal. 2012) (citing *Kraft*).

When interpreting an implied representation, the Court should evaluate "the overall,

common sense 'net impression' of the representation or act as a whole to determine whether it is

misleading,"  *FTC v. AMG Servs., Inc.*, 29 F. Supp. 3d 1338, 1349 (D. Nev. 2014) (quoting

*Commerce Planet*, 878 F. Supp. 2d at 1063).  A representation "capable of being interpreted in a

misleading way should be construed against" the party making the representation.  *Simeon

Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1146 (9th Cir. 1978) (quoting *Resort Car Rental Sys., Inc.

v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975)).

### 2.    Determining Whether the Claims Were Likely to Mislead

Simply put, representations are misleading when they are false.  *Pantron I*, 33 F.3d at

1096.  Both express and implied claims may violate the FTC Act.  *FTC v. Gill*, 71 F. Supp. 2d

1030, 1043 (C.D. Cal. 1999); *FTC v. Figgie Int'l., Inc.*, 994 F.2d 595, 604 (9th Cir.1993)

("[Defendant] can point to nothing in statute or case law which protects from liability those who

merely imply their deceptive claims; there is no such loophole.").

### 3.    Determining Whether the Claims Are Material

A misleading impression created by a representation is material if it "involves

information that is important to consumers and, hence, likely to affect their choice of, or conduct

regarding, a product." *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (quoting *Cliffdale Assocs.*, 103 F.T.C. at 165).  Certain types of representations are presumptively material, including express product claims, *Pantron I*, 33 F.3d at 1095-96, health and safety claims, *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 960 (N.D. Ill. 2006), claims involving purpose, safety, or efficacy, *Cliffdale Assocs.*, 103. F.T.C. at 182, and express or implied claims relating to a product's central characteristics, *FTC v. Mortg. Relief Advocates LLC*, No. CV-14-5434-MWF (AGRx), 2015 WL 11257575, at *2 (C.D. Cal. July 1, 2015).

## IV.   LIABILITY ARGUMENT

Summary judgment is appropriate here because there is no dispute that: (a) D-Link made representations that D-Link devices were secure from unauthorized access; (b) D-Link devices contained many vulnerabilities, which made D-Link devices not secure from unauthorized access; and (c) D-Link's statements about security are material to consumers.

This section discusses each of D-Link's alleged misrepresentations separately.  It first discusses the claims made in D-Link's Security Event Response Policy ("SERP").  Next, it discusses D-Link's claims in the promotional brochures for its routers.  Finally, it discusses D-Link's claims in the user interface for its IP cameras.

### A.   D-Link's Security Event Response Policy ("SERP") Claims Violate the FTC Act (Count 2; Complaint Exhibit 1)

The FTC prevails on Count 2 because D-Link's SERP deceived consumers through its express claims about the security of its devices and through the net impression conveyed by the SERP in its entirety—that D-Link took reasonable steps to secure its devices from unauthorized access.[19]  In fact, these express and implied claims were false.

---

[19] *See* FTC Compl. ¶¶ 31-33; Brown Decl. Ex. 2, PX 1.

1.      **D-Link Claims It Engaged in Particular Software Security Practices in Its SERP.**

There is no factual dispute that the SERP contains express claims related to the security of D-Link's devices.[20]  Specifically, in the section "D-Link's Commitment to Product Security," D-Link explicitly promises:

> D-Link prohibits at all times, including during product development by D-Link or its affiliates, any intentional product features or behaviors which allow unauthorized access to the device or network, including but not limited to undocumented account credentials, covert communication channels, "backdoors" or undocumented traffic diversion.  All such features and behaviors are considered serious and will be given the highest priority.[21]

This statement expressly notes that D-Link will "prohibit" any "features or behaviors" that "allow unauthorized access."  Despite its express claims, D-Link's devices did in fact contain, and continue to contain, both undocumented account credentials and backdoors.  D-Link did not disclose the existence of these vulnerabilities to consumers.

In addition to the foregoing express claims, a facial analysis of D-Link's SERP representations reveals that D-Link creates the net impression that it has taken reasonable steps to secure its products from unauthorized access.  *See FTC v. Cyberspace*, 453 F.3d at 1200 (stating that a representation "may be likely to mislead by virtue of the net impression it creates even though [it] also contains truthful disclosures.").  In the SERP, D-Link also assures consumers that:

- it uses global "security event response teams" that work with and respond to "customers, vendors, partners, consultants, security researchers, industry organizations, and others to identify potential security issues in our products";

---

[20] There is no factual dispute that D-Link disseminated the SERP on its website from approximately December 2013 to September 2015.  D-Link Sys. Answer to FTC Compl. ¶ 20 (Oct. 3, 2017) (Dkt. No. 92) ("DLS admits that from approximately December 2013 until September 2015, a document titled "Security Event Response Policy" was posted on its webpage at http://support.dlink.com/securityadvisories.aspx.").  This motion describes the SERP in the past tense, because it was eventually taken down.  By contrast, the router brochures and the GUI representations remain on the D-Link website and software set-up wizard, respectively, and so are describe in the present perfect tense.
[21] Brown Decl. Ex. 2, PX 1.

- it encourages anyone who suspects a product security issue to bring that concern to the attention of its security event response team;
- the "security event response team" monitors security requests received via e-mail on a 24/7/365 basis; that "Reports [of security vulnerabilities] are typically acknowledged within 24 hours" and "Plan of actions are typically offered with in [sic] 48 hours of a recognition and posting of a report"; and
- consumers can readily track security vulnerability information from D-Link by accessing any of various sources (web, e-mail, RSS, Twitter, or various public relations contacts).[22]

A facial analysis of the SERP establishes that reasonable consumers who viewed the SERP would believe that D-Link has taken reasonable steps to secure its products from unauthorized access.  *See FTC v. Medlab*, 615 F. Supp. 2d 1068, 1078 (N.D. Cal. 2009) (holding that no extrinsic evidence was necessary to prove "obvious" implied claims).  The Court should construe this reasonable interpretation of D-Link's representations in the SERP against them.  *Simeon Mgmt.*, 579 F.2d 1146.  Here, the FTC is not required to present extrinsic evidence of what D-Link's claims implied in order to prove "what is obvious to any rational reader."  *Medlab*, 615 F. Supp. 2d 1078.

Although the Court may conduct a facial analysis without looking to extrinsic evidence, to assist the trier of fact, in further support of this analysis, the FTC submits extrinsic evidence in the form of a facial analysis by a marketing communications expert, Dr. Terrence A. Shimp.[23]  Dr. Shimp's expert report comprehensively describes the process by which consumers research routers and IP cameras, including by conducting online research on brands' websites.[24]  Dr. Shimp analyzed the SERP and offered opinions on the implied claims that D-Link made in this document.[25]  Dr. Shimp concluded that the type of reasonable consumers who would read the SERP would form the belief, upon reading it, that D-Link takes security very seriously and that D-Link has taken reasonable steps to secure its products from unauthorized access.[26]  D-Link's experts do not present evidence contrary to this conclusion.

---

[22] *Id.*
[23] *See* Brown Decl. Ex. 55, Shimp Decl. incorporating Expert Report ("Shimp Report").
[24] Brown Decl. Ex. 55, Shimp Report ¶¶ 19-24, 55.
[25] *Id.* ¶¶ 56-60.
[26] *Id.* ¶¶ 57, 60.

### 2. D-Link's SERP Was Likely to Mislead Because D-Link Did Not Engage in the Claimed Software Security Practices.[27]

The SERP's express claims are false because D-Link did not, in fact, "prohibit[] at all times, including during product development by D-Link or its affiliates, any intentional product features or behaviors which allow unauthorized access . . . including but not limited to undocumented account credentials…[and] backdoors."[28] As AJ Wang, D-Link's Chief Technology Officer and acting president at the time D-Link disseminated the SERP, testified, ██████ ███████████████████████████████████████████████████████████████████ ███████████████████████[29]

When the SERP was on its website,[30] D-Link sold D-Link devices that it knew had backdoors and undocumented credentials. ████████████ DLS sold D-Link cameras[31] with software that had an undocumented login credential to view the video feed using the easily guessable username "guest" and password "guest."[32] D-Link learned of this backdoor, or undisclosed credential, in 2013, and released software ostensibly designed to remove the guest/guest credential.[33] ███████████████████ D-Link continued to the sell at least one

---

[27] If the Court does not grant this motion for summary judgment, the FTC intends to establish at trial many facts beyond those described herein. The facts described in this section are those material facts regarding which there is no genuine dispute.

[28] Brown Decl. Ex. 2, PX 1.

[29] Brown Decl. Ex. 5, Wang Dep. 160:2-9, 161:19-162:5. *See also* Brown Decl. Ex. 49, Brown Dep. 222:7-223:4 ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

[30] *See supra* note 20.

[31] *E.g.*, Brown Decl. Ex. 11, D-Link Sys.' 1st Am. Answers & Objs. to FTC 3d Set of Interrogs. ("3d Interrogs.") Resp. 9 ████████████████████████████████.

[32] Brown Decl. Ex. 16, ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ Brown Decl. Ex. 17, ██████████████████████████████████████████████████ ████████ Brown Decl. Ex. 18, ████████████████████████████████████ ████████████████████████████████████████████████████████ There is also no mention of the guest account in affected cameras' user manuals. *E.g.*, Brown Decl. Ex. 19, (DCS-2310L User Manual v1.0 at 73) (DLS0005107-95). See further discussion of the D-Link camera backdoors below, at Part IV.C.2.

[33] *Supra* note 32; Brown Decl. Ex. 20, (DCS-2310L Firmware Release Notes) (DLS0005255-59) ("Remove the default account 'guest'" in v1.01.10, June 18, 2013, at DLS0005256-57).

device model that had the backdoor credential.[34]  This device, with the undocumented credential still present, continued to be available through D-Link's two primary online sales channels[35] in August 2018.[36]  Nor did D-Link make it easy for consumers to learn about the software patches. Unless a consumer signed up separately for the "mydlink" cloud service, the only way he or she would know there was an updated firmware version was by visiting the support page for his or her device.[37]  There is thus no genuine dispute that it was false and misleading for D-Link to claim it "prohibits at all times . . . undocumented account credentials . . . [and] 'backdoors'" while continuing to sell cameras preinstalled with the highly exploitable guest-guest backdoor.[38]

The net impression claims made by the SERP—that D-Link took reasonable steps to secure D-Link devices from unauthorized access—were also false, because D-Link did not take such reasonable steps.  During the time D-Link published the SERP, D-Link devices were affected by well-known, foreseeable, and easily preventable vulnerabilities,[39] the existence of which is undisputed by D-Link's two security experts.[40]  In addition, there is no genuine issue of fact that many of these vulnerabilities had been ranked by the Open Web Application Security Project ("OWASP")—an organization that D-Link's putative expert agrees is an authoritative source of information[41]—as "among the most critical and widespread web application vulnerability since at least 2007" ("OWASP Top Ten").[42]

---

[34] Brown Decl. Ex. 11, 3d Interrogs. Resp. 9 ███████████████████████████████.
[35] Brown Decl. Ex. 5, Wang Dep. 47:17-19.
[36] Brown Decl. Ex. 21, Hine Decl. ¶¶ 2-3, 5-7, 9-10.  These cameras are still available for purchase new from resellers.  *Id.* ¶ 2.  Mr. Hine's Declaration is the subject of a pending motion by the FTC to permit the use of facts that the FTC was not reasonably able to learn prior to the close of fact discovery.  *See* FTC Letter Brief (Sept. 4, 2018) (Filed Unsealed at Dkt. No. 168). Even absent this evidence, there is no genuine dispute that the SERP's express claims were false or misleading.
[37] Brown Decl. Ex. 6, Brown Investigational Hr'g, 620:13-19.
[38] Brown Decl. Ex. 2, PX1.  *See* Part IV.C.2 (discussing D-Link camera backdoors).
[39] *See, e.g., supra* note 32; *infra* note 50.
[40] Neither of D-Link's security experts disputed the existence of these vulnerabilities (which were also identified in the Report of the FTC's security expert, Mark Graff).  Brown Decl. Ex. 7, Radcliffe Dep. 219:20-25, 225:13-17; 237:8-15; Brown Decl. Ex. 8, Schaumont Dep. 43:11-23.
[41] Brown Decl. Ex. 56  Ex ert Re ort of Dr. Patrick Schaumont  "Schaumont Re ort"   65 (████████████████████████████████████████████████████████████████").
[42] *See* FTC Compl. ¶ 15.

In at least two known instances, D-Link actually was *on notice* of the well-known, foreseeable, and easily-preventable vulnerabilities on D-Link devices *before* it marketed and sold them in the United States.

In addition to these instances where D-Link was clearly on notice of the vulnerabilities, there are numerous instances where there is no genuine issue of fact that D-Link devices suffered from significant vulnerabilities during the time of the publication of the SERP.[50]  One of these vulnerabilities[51] that occurred during the period in which the SERP was available on D-Link's website caused ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████[52]  During this same time, D-Link's lack of secure practices led to it posting a private key that put all Windows computer users at greater risk of malware being installed on their computers.[53]

---

[50] D-Link has  ublicl   acknowled ed man   such vulnerabilities through its "Security Advisories." ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████  The FTC's security expert, Mark Graff, further addresses each of these in his Expert Report.  Brown Decl. Ex. 57, Graff Decl. incorporating Expert Report ("Graff Report") ███████████████████████████████████████████

[51] Brown Decl. Ex. 31, ████████████████████████████ Brown Decl. Ex. 32, ███████████████████████████████████████████

[52] Brown Decl. Ex. 33, ██████████████████████████████████████████████
[53] From February to September 2015, D-Link publicly   osted a   rivate ke   used to si  n Windows software it distributed.  Brown Decl. Ex. 34, ██████████████████  This key could have allowed attackers to bypass operating system warnings when planting malicious software on consumers' computers, including consumers with no relationship to D-Link.  *Id.* ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████  Brown Decl. Ex. 12, D-Link Sys.' Answers & Objs. to FTC 5th Set of Interrogs. ("5th Interrogs.") Resp. 15 ████████████████████████████████████████  Brown Decl. Ex. 9, D-Link Corp. 30(b)(6) Dep. 253:16-254:11; Brown Decl. Ex. 10, D-Link Sys. 30(b)(6) De  . 195:11-22 ████████████████████████████████████████████████████; *see* Brown Decl. Ex. 57, Graff Report ¶¶ 241-44.

D-Link devices suffered from these serious, long-recognized types of vulnerabilities because D-Link did not develop devices using processes designed to identify and fix well-known vulnerabilities before sale.  There is no genuine dispute that from before the publication of the SERP ████████████████████████████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ █████████████████████████████  D-Link's expert Dr. Schaumont stated that ████████████████████████████████████████████████ █████████████████████████████████████████████████████████

For the reasons above, there is no genuine dispute that it was false or misleading for D-Link to have made claims it took reasonable steps to secure D-Link devices from unauthorized access.

### 3. D-Link's SERP Claims Are Material Because They Are Express and Because Security Is a Central Characteristic of Routers and IP Cameras.

D-Link's claims about prohibiting unauthorized access through features such as undocumented credentials and backdoors are presumed material because the claims are express. *Pantron I*, 33. F.3d at 1095-96.

D-Link's security claims in the SERP—whether express or implied—also are presumed material because they relate to security, a characteristic that implicates the very purpose or efficacy of consumer routers and IP cameras.  *Mortg. Relief Advocates*, 2015 WL 11257575, at

---

[54] Brown Decl. Ex. 6, Brown Investigational Hr'g 330:23-331:9 (William Brown testifying that ████████████████████████████████████████; Brown Decl. Ex. 7, Radcliffe Dep. 106:15-107:3 (reaffirming that prior to the middle of 2014, D-Link Corporation used III/Onward "to test products, but on a more ad hoc basis").
[55] Brown Decl. Ex. 11, 3d Interrogs. Res . 9  statin  sales dates for D-Link devices).
[56] *See* Brown Decl. Ex. 35, ███████████████████████████████████████████ ██████████████████████
[57] Brown Decl. Ex. 8, Schaumont Dep. 240:22-241:5.  D-Link's other security expert also agreed that "testing is an integral part of a security program, looking for vulnerabilities in their products."  Brown Decl. Ex. 7, Radcliffe Dep. 143:9-16.

*2; *see also Thompson Med. Co., Inc.*, 104 F.T.C. 648, 1984 WL 565377, at *102 (1984) (FTC "cases have established several categories of claims pertaining to the central characteristics of a product or service, such as those relating to its purpose, safety, efficacy, or cost."). Evidence supporting the fact that security is central to these devices' purpose and efficacy includes internal D-Link emails. These emails confirm that "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"[60] D-Link's former CTO, AJ Wang, provided similar evidence of the centrality of device security to consumers when he testified that ██████████████████████████████████████████████████████████████████████████████████[61] Because D-Link's claims at issue concern the security of its devices, a characteristic that is central to the efficacy of these devices, these claims are presumptively material.

The FTC offers further extrinsic evidence of the SERP claims' materiality through its expert, Dr. Shimp, who opined that the claims made by the SERP are "manifestly material to [consumers'] subsequently evaluating and choosing D-Link router and IP camera products.[62] A claim is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.com*, 453 F.3d at 1201 (quoting *Cliffdale Assocs.*, 103 F.T.C. at 165). Dr. Shimp further opines that the fact that D-Link

---

[58] Brown Decl. Ex. 36, ████████████████████████████████████████████████████████████
████████████

[59] Brown Decl. Ex. 37, ████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

[60] Brown Decl. Ex. 38, ████████████████████████████████████████████████████████████
██████████████████████████ Brown Decl. Ex. 39, ████████████████████████████████████
██████████████████████████████████████████████████████████████

[61] Brown Decl. Ex. 5, Wang Dep. 34:25-35:6, 35:21-36:5.
[62] Brown Decl. Ex. 55, Shimp Report ¶ 60.

both created the SERP and posted it on its website leads to the conclusion that D-Link itself acknowledges that the security of its wireless routers and IP cameras is material to its consumers.[63]  Mr. Graff also confirmed the importance of security to routers.[64]

D-Link's experts offered no affirmative or rebuttal evidence regarding whether D-Link's SERP security claims were material to consumers.  Thus, there is no genuine dispute that D-Link's claims in the SERP are material.

**B.   D-Link's Router Brochures Claims Violate the FTC Act (Count 3; Complaint Exhibits 2-5)**

The FTC prevails on Count 3 because D-Link has made claims in its router brochures that its routers are secure from unauthorized access, and these claims are false.  D-Link's routers neither were nor are secure from unauthorized access.

**1.   D-Link Router Brochures Promoted the High Quality of Their Security.**

D-Link has made express and implied claims about its routers' security in promotional brochures that it has posted on its website and distributed to retail partners.[65]

**a.   D-Link Claims the DIR-615 Is Secure from Unauthorized Access (Count 3; Complaint Exhibit 2).**

D-Link marketed and sold the DIR-615 router[66] █████████████████████████████

 ██████[67]  In its promotional brochure, under the heading "***EASY TO SECURE***" D-Link claims:

---

[63] Brown Decl. Ex. 55, Shimp Report ¶ 55.

[64] The FTC offers additional extrinsic evidence that security is a central characteristic from its expert, Dr. Mark Graff, who states that "[s]ecurity is necessarily a core feature of routers . . . . Router manufacturers (including D-Link) acknowledge the centrality of security because they include on their devices certain security features: firewalls to stop certain incoming data and encryption for wireless connections on the LAN (*e.g.*, WPA2)."  Brown Decl. Ex. 57, Graff Report ¶ 26.

[65] Brown Decl. Ex. 14, D-Link Sys.' Answers & Objs. to FTC 1st Set Reqs. for Admis. ("RFA") Resps. 57-60.  *See also* FTC Compl. ¶ 21, 21a-d; Brown Decl. Ex. 3, PX 2-5.

[66] Brown Decl. Ex. 14, RFA Resp. 62; RFA Resps. 63-64, 67 (Rev. A); RFA Resps. 91, 96 (Rev. B); RFA Resps. 97, 102 (Rev. C); RFA Resps. 71, 72, 76 (Rev. E); RFA Resps. 77-78, 80-81 (Rev. I).

[67] Brown Decl. Ex. 11, 3d Interrogs. Resps. 9, 10; Brown Decl. Ex. 12, 5th Interrogs. Resp. 22; Brown Decl. Ex. 14, RFA Resps. 62, 63, 71, 77, 91, 97.

> The DIR-615 supports the latest wireless security features to help prevent unauthorized access, be it from over a wireless network or from the Internet. Support for WPA™ and WPA2™ standards ensure that you will be able to use the best possible encryption, regardless of your client devices.  In addition, [the router] utilizes dual active firewalls (SPI and NAT) to prevent potential attacks from across the Internet.

> Delivering great wireless performance, network security and coverage, [the router] is ideal for upgrading your existing wireless home network.[68]

There is no factual dispute that D-Link disseminated these claims by posting the DIR-615 promotional brochure on its main product website[69] and making it available for download from the support page for the DIR-615.[70]  Any consumer could access the DIR-615 support page by searching the D-Link website.[71]

    In addition to the foregoing express claims, a facial analysis of D-Link's representations in the DIR-615 promotional brochure reveals that D-Link creates the net impression that the DIR-615 is secure from unauthorized access through, for example, the title, the prominence of the representation on the brochure, and the reference to the threat of "attacks."  Although the Court may conduct a facial analysis without looking to extrinsic evidence, to assist the trier of fact, the FTC presents additional extrinsic evidence of this implied claim through its expert, Dr. Shimp, who opined that reasonable consumers would form the belief, upon reading PX 2, that the DIR-615 router is secure from unauthorized access.[72]

---

[68] FTC Compl. ¶ 21a; Brown Decl. Ex. 3, PX 2.  There is no factual dispute that D-Link has made securit▓  claims in the DIR-615 promotional brochure that it posted on its website and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓);  Brown Decl. Ex. 14, RFA Resp. 57 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; Brown Decl. Ex. 13, D-Link Sys.' Answers and Objs. to FTC 6th Set of Interrogs. ("6th Interro▓s."  Res▓▓s. 26-27 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓").

[69] Brown Decl. Ex. 11, 3d Interrogs. Resp. 8 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).
[70] Brown Decl. Ex. 14, RFA Resps. 61, 67, 72, 76, 80-82.
[71] Brown Decl. Ex. 14, RFA Resp. 62.
[72] Brown Decl. Ex. 55, Shimp Report ¶¶ 35-36.

> **b.   D-Link Claims the DIR-412 Is Secure from Unauthorized Access (Count 3, Complaint Exhibit 3).**

D-Link marketed and sold the DIR-412 mobile wireless router[73] ███████████████

████████████, ███[74]  Under the heading "***ADVANCED NETWORK SECURITY***," D-Link claims:

> The DIR-412 ensures a secure Wi-Fi network through the use of WPA/WPA2 wireless encryption.  Simply press the WPS button to quickly establish a secure connection to new devices.  The DIR-412 also utilizes dual-active firewalls (SPI and NAT) to prevent potential attacks and intrusions from across the Internet.[75]

There is no factual dispute that D-Link disseminated these claims by posting the DIR-412 promotional brochure on the D-Link website[76] and making it available for download from the DIR-412 support page.[77]  Any consumer could access the DIR-412 support page by searching the D-Link website.[78]

In addition to the foregoing express claims, a facial analysis of D-Link's representations in the DIR-412 promotional brochure reveals that D-Link creates the net impression that the DIR-412 is secure from unauthorized access.  The FTC presents additional, extrinsic evidence of this implied claim through its expert, Dr. Shimp, who opined that reasonable consumers would form the belief, upon reading PX 3, that the DIR-412 router is secure from unauthorized access.[79]

---

[73] Brown Decl. Ex. 14, RFA Resp. 103.

[74] Brown Decl. Ex. 11, 3d Interrogs. Resps. 9, 10; Brown Decl. Ex. 12, 5th Interrogs. Resp. 22.

[75] FTC Compl. ¶ 21b; Brown Decl. Ex. 3, PX 3; Brown Decl. Ex. 14, RFA Resp. 107 (████
████████████).  There is no factual dispute that D-Link has made securit  claims in the  DIR-412) promotional brochure that it posted on its website and ████████████████, Brown Decl. Ex. 14, RFA Resp. 58; Brown Decl. Ex. 13, 6th Interrogs. Resps. 26-27.

[76] Brown Decl. Ex. 11, 3d Interrogs. Resp. 8 (████████████████████).

[77] Brown Decl. Ex. 14, RFA Resps. 105, 107, 110 (████████████████████████
████████████).

[78] Brown Decl. Ex. 14, RFA Resp. 106.

[79] Brown Decl. Ex. 55, Shimp Report ¶¶ 38, 42.

c.      **D-Link Claims the DIR-815 Is Secure from Unauthorized Access (Count 3; Complaint Exhibit 4).**

D-Link marketed and sold the DIR-815 router[80] ███████████████████████

████ ████ [81] Under the heading "**Advanced Network Security**," D-Link claims:

> The [DIR-815] Router supports the latest wireless security features to help prevent unauthorized access, be it from over a wireless network or from the Internet.  Support for WPA™ and WPA2™ standards ensure that you will be able to use the best possible encryption method.  In addition, this [DIR-815] Router utilizes Stateful Packet Inspection firewalls (SPI) to help prevent potential attacks from across the Internet.[82]

There is no factual dispute that D-Link disseminated these claims by posting the DIR-815 promotional brochure on the D-Link website[83] and making it available for download from the DIR-815 support page.[84]  Any consumer could access the DIR-815 support page by searching the D-Link website.[85]

In addition to the foregoing express claims, a facial analysis of D-Link's representations in the DIR-815 promotional brochure reveals that D-Link creates the net impression that the DIR-815 is secure from unauthorized access.  The FTC presents additional, extrinsic evidence of this implied claim through its expert, Dr. Shimp, who opined that reasonable consumers would form the belief, upon reading PX 4, that the DIR-815 router is secure from unauthorized access.[86]

---

[80] Brown Decl. Ex. 14, RFA Resp. 114; Brown Decl. Ex. 12, 5th Interrogs. Resp. 22.
[81] Brown Decl. Ex.11, 3d Interrogs. Resps. 9, 10.
[82] FTC Compl. ¶ 21c; Brown Decl. Ex. 3, PX 4.  There is no factual dispute that D-Link has made security claims in the (DIR-815) promotional brochure that it posted on its website and ███████████████████) Brown Decl. Ex. 14, RFA Resp. 59 (███████████████ ███████████████); Brown Decl. Ex. 13, 6th Interrogs. Resps. 26-27.
[83] Brown Decl. Ex. 11, 3d Interrogs. Resp. 8 (███████████████████████████).
[84] Brown Decl. Ex. 14, RFA Resps. 129.
[85] Brown Decl. Ex. 14, RFA Resp. 116.
[86] Brown Decl. Ex. 55, Shimp Report ¶¶ 44-48.

    **d.**  **D-Link Claims the DIR-645 Is Secure from Unauthorized Access (Count 3, Complaint Exhibit 5).**

  D-Link marketed and sold the DIR-645 fro ████████████████████████[87]

Under the heading "**128-bit Security Encryption**," D-Link claims:

> The [DIR-645] protects your network with 128-bit AES data security
> encryption—the same technology used in E-commerce or online banking.  Create
> your own network name and password or put it at the tip of your fingers with
> 'Push Button Security' standard on every Amplifi device.  With hassle-free plug
> and play installation, and advanced Wi-Fi protected setup, the [DIR-645] is not
> only one of the fastest routers available, its [sic] also one of the safest.[88]

There is no factual dispute that D-Link disseminated these claims by posting the DIR-645

promotional brochure on the D-Link website[89] and making it available for download from the

DIR-645 support page.[90]  Any consumer could access the DIR-645 support page by searching

the D-Link website.[91]

  In addition to the foregoing express claims, a facial analysis of D-Link's representations

in the DIR-645 promotional brochure reveals that D-Link creates the net impression that the

DIR-645 is secure from unauthorized access.  The FTC presents additional, extrinsic evidence of

this implied claim through its expert, Dr. Shimp, who opined that reasonable consumers would

form the belief, upon reading PX 5, that the DIR-645 router is secure from unauthorized

access.[92]

---

[87] Brown Decl. Ex. 14, RFA Resp. 131; Brown Decl. Ex. 11, 3d Interrogs. Resps. 9, 10; Brown
Decl. Ex. 12, 5th Interrogs. Resp. 22.
[88] FTC Compl. ¶ 21.d; Brown Decl. Ex. 3, PX 5.  There is no factual dispute that D-Link has
made security claims in the (DIR-645) promotional brochure that it has posted on its website and
████████████████), Brown Decl. Ex. 14, RFA Resp. 60 (████████████████████
████████); Brown Decl. Ex. 13, 6th Interrogs. Resps. 26-27.
[89] Brown Decl. Ex. 11, 3d Interrogs. Resp. 8 (████████████████████████
███████).
[90] Brown Decl. Ex. 14, RFA Resps. 140 (████████████████████████████████
███████).
[91] Brown Decl. Ex. 14, RFA Resp. 134.
[92] Brown Decl. Ex. 55, Shimp Report ¶ 52.

      2.      **D-Link's Router Brochures Claims Are Likely to Mislead Because the Routers Were Not Secure from Basic Threats.**

D-Link's router brochure claims are false and misleading.  There is no genuine dispute that the promoted routers neither were nor are secure from unauthorized access.  As a preliminary matter, as discussed in Section IV.A.3, above, the DIR-615, 412, 815, and 645 were not secure from unauthorized access because D-Link failed to take reasonable steps to secure D-Link devices from unauthorized access.  And, in fact, as a result of these failures, the routers suffer from serious, well-known, foreseeable, and easily preventable vulnerabilities, as discussed below.[93]

There is no genuine dispute of fact that DIR-615, 412, 815, and 645 contained well-known, preventable vulnerabilities that would allow a cybercriminal to take over the device and access a consumers' personal information.[94] ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[93] The FTC's security expert Mark Graff opined that the vulnerabilities affecting these four routers were foreseeable and preventable, and that they were caused by well-known code development failures.  Brown Decl. Ex. 57, Graff Report ¶¶ 298-301.

[94] D-Link's two security experts do not dispute that these vulnerabilities exist on these versions of the firmware.  Brown Decl. Ex. 7, Radcliffe Dep. 219:20-25, 225:13-17, 237:8-15; Brown Decl. Ex. 8, Schaumont Dep. 43:11-23.  Each raises the concern that there is an absence of evidence of exploitation of these vulnerabilities.  *See, e.g.*, Brown Decl. Ex. 7, Radcliffe Dep. 197:14-198:7.  That dispute, however, does not raise an issue of disputed fact regarding whether the devices were secure from unauthorized access.

[95] Brown Decl. Ex. 40, ████████████████████████████████████████████
████████████████████████████████████████████  *See also* Brown Decl. Ex. 57, Graff Report ¶¶ 180-83, 299.

[96] Brown Decl. Ex. 41, ████████████████████████████████████████
████████████████████████████████████████████████  *See also* Brown Decl. Ex. 57, Graff Report ¶¶ 193-99, 300.

The existence of these preventable vulnerabilities that permit unauthorized access—which long have been recognized in the OWASP Top Ten[99]—is inconsistent with the router brochures' express and implied claims that the routers were secure from unauthorized access.

### 3. D-Link's Router Brochures Claims Are Material Because They Are Express and Refer to Central Characteristics of Routers.

D-Link's security-related claims in its router brochures are presumed material because they are express claims, *Pantron I Corp.*, 33 F.3d at 1095–96, which tout to consumers that these routers provide "great . . . network security"[100] or are the "one of the safest" routers available.[101]

Further, as argued in Section IV.A.3 above, D-Link's claims about the security of its routers are presumptively material because they pertain to central characteristics, such as the "purpose" or "efficacy" of routers and IP cameras. *Mortg. Relief Advocates*, 2015 WL 11257575, at *2; *see also Thompson Med. Co.*, 1984 WL 565377, at *102. D-Link's own documents, corporate officer testimony, and the FTC's expert witness in software security all

---

[97] ██████████████ rown Decl. Ex. 42, ████

██████ Brown Decl. Ex. 43, ████████

Brown Decl. Ex. 57, Graff Report ¶¶ 174-76. ████
Brown Decl. Ex. 44, ████

████ *see also* Brown Decl. Ex. 57, Graff Report ¶¶ 177-79.

[98] Brown Decl. Ex. 45, ████

████ Brown Decl. Ex. 46, ████

The FTC's security expert, Mr. Graff, concluded that these vulnerabilities "significantly reduced the security of the device." Brown Decl. Ex. 57, Graff Report ¶ 298.

[99] *See, e.g.*, Brown Decl. Ex. 22 ████

[100] FTC Compl. ¶ 21a; Brown Decl. Ex. 3, PX 2.

[101] FTC Compl. ¶ 21d; Brown Decl. Ex. 3, PX 5.

1  support the undisputed fact that security is a central characteristic of routers.  *See* Section IV.A.3,

2  above.  Thus, there is no genuine issue of fact that D-Link's claims about the security of its

3  routers are material to consumers.

    C.    **D-Link's IP Camera Interface Claims Violated the FTC Act (Count 6;
          Complaint Exhibits 10-11)**

    The FTC prevails on Count 6 because D-Link deceived consumers through the graphical

user interface ("GUI") used to set up certain IP cameras for the first time.  The GUI included the

representation that setting a password would secure the device.  Contrary to this representation,

however, the software on the camera contained an alternative, secret password that could be used

maliciously to access the device video feed over the Internet.

    1.    **D-Link Made Claims in Its IP Camera Interface that Setting a
          Password Would Secure the Device.**

    There is no factual dispute that D-Link made express claims related to securing its IP

cameras in the GUIs for certain devices.  In the following D-Link IP cameras, the GUI displays

the phrase "Enter a password to secure your camera" alongside a prompt to type in a password

before proceeding to the next screen of the setup: ███████, DCS-2310L, and DCS-6010L.[102]

The following D-Link IP cameras display the phrase "Set up an Admin ID and Password to

secure your camera" alongside a prompt to set a password: ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████  These statements in the GUI make express claims that a

_____

[102] Brown Decl. Ex. 4, PX 11 (displaying representation); Brown Decl. Ex. 14  RFA Res  s. 163
████████████████████ 155 ████████████████████ Brown
Decl. Ex. 47, ███████████████████████ Brown Decl. Ex. 48,
DCS-6010L User Manual v1.1 at 19 (DLS0007087-7174).
[103] Brown Decl. Ex. 4, PX 10 (displaying representation); Brown Decl. Ex. 14, RFA Resps. 174-
209 ████████████████████████████████████████
[104] Brown Decl. Ex. 4, PX 10 (displaying representation); Brown Decl. Ex. 50, ████████-
████████████████████████

consumer's camera will be "secure" once a consumer sets his or her password.

A facial analysis of the GUI establishes that D-Link also makes an implied claim that it secured its IP cameras from unauthorized access and control.  In the context of setting up a device and "securing" it by setting a password, a reasonable interpretation of the claim that D-Link intended to convey to consumers is that once they set their password, the camera would be secure from unauthorized access and control.  The Court should construe this reasonable interpretation of D-Link's representations in its IP cameras' GUIs against them.  *Simeon Mgmt.*, 579 F.2d 1146.  The FTC is not required to submit extrinsic evidence supporting this reasonable interpretation of D-Link's implied claim.  *See Medlab*, 615 F. Supp. 2d at 1078.  Accordingly, there is no genuine dispute as to this fact.

> **2.    D-Link's IP Camera Interface Claims Are Likely to Mislead Because the Devices Had Another Secret Password that Could Be Used Maliciously for Unauthorized Access.**

There is no genuine dispute of material fact that D-Link's IP Camera GUI claims are deceptive, false, and misleading.  At the same time that D-Link represented to consumers that setting a user password would "secure" their device, they had also created in the software a backdoor to permit access to the device using an alternative credential with a standard, easily guessable username "guest" and password "guest."  Documents from D-Link and D-Link Corporation establish indisputably that this backdoor existed.[105]  These documents describe the backdoor existing on the following D-Link cameras:  DCS- 2132L; DCS-2210; DCS-2230; DCS-2310L; DCS-2332L; DCS-3112; DCS-3710; DCS-3716; DCS-6010L; DCS-6210; DCS-6510; DCS-6511; DCS-6513; DCS-6616; DCS-6818; DCS-7010L; DCS-7413; and DCS-7513.[106]

---

██████████████████████ Brown Decl. Ex. 14, RFA Resp. 155 (████████████████████
████████████████████████████████████████████████████████████████

[105] Brown Decl. Ex. 16, Guest User Account Security Advisement for Select D-Link IP Cameras (May 9, 2013) (DLS0005316-17); Brown Decl. Ex. 51, ███████████████████████████████████████████

[106] *Supra* note 101.

1    There is no genuine dispute that the guest/guest backdoor exists; nor is there any genuine

2    dispute that the backdoor was trivial for any third party to exploit.  William Brown, who was

3    responsible for security at D-Link, ███████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████ the guest/guest vulnerability

15   was trivially easy to exploit, and its existence rendered false the instruction to consumers that

16   entering a password would secure their cameras.

         **3.**     **D-Link's IP Camera Interface Claims Are Material Because They Are Express and Because They Relate to a Central Characteristic of IP Cameras.**

19   D-Link's IP camera claims are express claims and presumed material.  D-Link's experts

20   do not dispute the express nature of these claims; therefore, there is no disputed material fact that

21   these statements are indeed express.

22   Moreover, D-Link's claims should be presumed material because they concern a core

23   characteristic of the devices.  *See* Section IV.A.3.  Security of an IP camera's feed from

24   unauthorized access and control goes directly to what D-Link ████████████████████

---

[107] Brown Decl. Ex. 52, ██████████████████████████████████

[108] ████████████████████████████████████████████████████

[109] Brown Decl. Ex. 52, ████████████████████████████; Brown Decl. Ex. 53, ██████████████████████████████████

[redacted][110]  D-Link markets its cameras to be used in and around the home or office; therefore, a consumer's ability to secure it, *i.e.*, prevent others from logging into the camera to view the live feed, is central to its functioning as intended by D-Link.[111]  Further, D-Link's own documents, corporate officer testimony, and the FTC's expert witness in software security all support the undisputed fact that security is a central characteristic of consumer IP cameras.  *See* Section IV.A.3.  Accordingly, there is no genuine dispute as to this fact.

## CONCLUSION

This Court should grant the FTC's motion for summary judgment.  The Court should enter a permanent injunction, the substance of which will be the subject of further briefing, to enjoin D-Link from further violations of the FTC Act.

Dated:   September 21, 2018                    Respectfully submitted,

                                                          */s/ Jarad A. Brown*
                                                         KEVIN H. MORIARTY
                                                         CATHLIN TULLY
                                                         SHAMEKA WALKER
                                                         JARAD A. BROWN
                                                         KATHERINE E. McCARRON
                                                         JAMES A. TRILLING
                                                         Federal Trade Commission
                                                         600 Pennsylvania Avenue NW, Mail Drop CC-8232
                                                         Washington, DC 20580

                                                         *Attorneys for Plaintiff*
                                                         *Federal Trade Commission*

---

[110] Brown Decl. Ex. 6, Brown Investigational Hr'g 61:17-62:4 [redacted].
[111] Brown Decl. Ex. 54, DCS-2310L Datasheet (DLS0005100-03 at 5101) ("Features[:] Remotely Monitor Your Home or Office over the Internet").